MATTER OF PEREZ-JIMENEZ

In DEPORTATION Proceedings

A-11261536

*Decided by Board July 19, 1963*

When parallel deportation and extradition proceedings are pending, the outstanding order of deportation will be withdrawn and further deportation proceedings held in abeyance during the pendency of extradition proceedings, since further deportation proceedings would serve no useful purpose and the outstanding order of deportation might unnecessarily and improperly complicate the extradition proceedings.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry—No immigrant visa (8 U.S.C. 1182(a)(20)).

Lodged: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer than permitted as a nonimmigrant.

Respondent is a former president of the Republic of Venezuela. Early in 1958 revolutionary forces terminated his incumbency as president. He left his homeland at that time.

Our decision of September 8, 1959, affirmed the special inquiry officer's order directing respondent's deportation on the charge that he had remained in this country as a nonimmigrant longer than permitted. Respondent has not designated a country to which he would prefer to be sent if deported.[1]

Subsequent to our prior order respondent applied for the benefits of section 243(h) of the Immigration and Nationality Act. The case comes here now on respondent's motion to reopen the proceedings to afford him a hearing on that application and on the Service motion to withdraw the deportation order.[2] We conclude that the Service motion should be granted.

---

[1] When the special inquiry officer heard respondent's case, the regulations did not provide, as now, for the special inquiry officer to determine the place of deportation.

[2] Respondent has also filed in the District Court, Southern District of Florida a petition for a mandatory injunction, seeking adjudication of his application.

Respondent last arrived in the United States at West Palm Beach, Florida on March 28, 1958. He then possessed a Venezuelan diplomatic passport and a nonimmigrant visa issued on February 10, 1958 at our Embassy in Santo Domingo.[3] The Service initially paroled respondent but on January 7, 1959 admitted him as a temporary visitor. Respondent is 49 years old. His wife and four minor children are with him in this country. Only respondent is under proceedings at this time, however.

The Consul General of Venezuela in Miami informed the Service by letter of June 5, 1958 that the Venezuelan government had cancelled the diplomatic passports of respondent and his wife and children (Ex. 4).

On August 24, 1959 the Venezuelan Consul in Miami filed a complaint in the District Court for the Southern District of Florida seeking respondent's extradition to Venezuela. A district judge, sitting as a magistrate in extradition proceedings, found probable cause that respondent had committed in Venezuela certain financial crimes which are covered by the Treaty of Extradition between Venezuela and this country.[4] He committed respondent to the custody of the United States Marshal to await the Secretary of State's action.[5] Respondent then brought habeas corpus proceedings, which the District Court dismissed. The Court of Appeals affirmed that decision and the Supreme Court denied certiorari.[6] The extradition proceedings now

---

[3] Then Ciudad Trujillo.

[4] 43 Stat. 1698, T.S. No. 675 (1923).

[5] 18 U.S.C. 3186.

[6] *Jimenez* v. *Aristeguieta*, 311 F.2d 547 (C.A. 5, 1962), cert. den. *sub nom. Jimenez* v. *Hixon*, 373 U.S. 914 (1963).

Litigation connected with the extradition proceedings has been extensive. The judicial phase of the principal action terminated with an order of the magistrate dated June 16, 1961, committing respondents to the custody of the United States Marshal, and an order of June 23, 1961, certifying the record to the Secretary of State with the judge's findings. Earlier in that proceeding, another judge had denied respondent's motion for a protective order against the taking of certain depositions. Respondent attempted an appeal, but the Court of Appeals for the 5th Circuit held that it had no jurisdiction of an appeal from an interlocutory or final order of a magistrate in an extradition proceeding. *Jimenez* v. *Aristeguieta*, 290 F. 2d 106 (C.A. 5, 1961)—criticized; 61 Mich. L. Rev. 383 (1962).

There have been various collateral proceedings in addition to the habeas corpus proceedings cited above. *Aristeguieta* v. *Jimenez*, 274 F.2d 206 (C.A. 5, 1960, *per curiam*) and *First National City Bank* v. *Aristeguieta*, 287 F. 2d 219 (C.A. 2, 1960), cert. granted 365 U.S. 840 (1961)—denials of motions to quash subpeoneas duces tecum. *Jimenez* v. *Aristeguieta*, 314 F.2d 649 (1963)—denial of bail.

await the Secretary of State's decision whether to issue a warrant of extradition.

The Service contends that the extradition proceedings and Immigration proceedings are exclusive and independent of each other. Both the Service motion and the argument of respondent's counsel point out that if respondent's removal takes place under extradition proceedings while there is outstanding an order of deportation, the deportation order will be executed.[7] The Service further points out that in the event of extradition any immigration proceedings will be mooted and terminated. Therefore, the Service contends, the outstanding deportation order serves no useful purpose at this time and may introduce complications.

The Service also argues that, if the Secretary of State fails to issue a warrant of extradition, resumption of deportation proceedings would enable extending to respondent all rights and privileges under the deportation laws and regulations, including adjudication of his application under section 243(h). Thus, the Service urges, the motion, in seeking to eliminate the possibility of execution of the deportation order without affording respondent his full rights and privileges under the laws pertaining to deportation, is beneficial to respondent.

Respondent contends that the Service motion, if granted, would not benefit him but would deprive him of his right to an adjudication at this time of his application under section 243(h). He apparently would risk the possibility of deportation through extradition in order to obtain such an adjudication. Respondent thus prefers to rest his case for avoiding return to Venezuela upon the Attorney General's ruling in deportation proceedings rather than the Secretary of State's ruling in the extradition proceedings. We are to determine whether to grant either of the motions before us and if so which one.

We find that we need not determine whether withdrawal of the deportation order would be beneficial or detrimental to respondent. Therefore, we do not decide whether extradition would execute an outstanding order of deportation. If granting the Service motion would benefit respondent by preventing deportation shorn of some of its procedural safeguards, such benefit would be, for our purposes, a side effect. We base our decision on the grounds that, in view of the extra-

---

[7] Counsel for the Service indicated at oral argument that he is unwilling to concede merit in respondent's argument that extradition with a final order of deportation outstanding would be in effect a self-executing deportation without an opportunity for respondent to be heard on his application for a stay of deportation. The Service representative pointed out, however, that granting the Service motion would avoid the situation respondent contemplates. Compare section 101(g), Immigration and Nationality Act, 8 U.S.C. 1101(g).

dition proceedings, further deportation proceedings would serve no useful purpose and may unnecessarily and improperly complicate the extradition proceedings.

As we have seen, the Service motion states that deportation and extradition proceedings are exclusive and independent of each other. Respondent asserts that the Service actions so far in these proceedings have not demonstrated the two are mutually exclusive and independent. Both the Service and respondent are correct to some extent. The two procedures are independent in the sense that the proceedings under each are separate and distinct and that a decision in one is not necessarily dependent upon the findings in the other. Though for different purposes, they are related in their effect of removing a person from the country.[8] Where the proceedings are parallel, therefore, one should be cognizant of the other.

We may properly comment upon the pending extradition proceedings only to the extent that references to those proceedings are necessary to our decision in the matter before us. We note that, essentially, respondent seeks to avoid extradition and deportation on the same ground. He contends that the present political climate in Venezuela is decidedly adverse to him and therefore he should not be returned to Venezuela at this time.

Respondent apparently perceives that pursuing his section 243(h) application and his defense to extradition simultaneously may offer procedural advantages to him. He points to the established regulations and procedures and the avenues for judicial review which appertain to an application filed pursuant to section 243(h). Although not suggesting that he would not receive due process of law at the hands of the Secretary of State, respondent says that there are no regulations governing the Secretary of State's action and that the procedures are less tested and more nebulous than those in deportation proceedings.

At oral argument respondent's counsel suggested that a favorable conclusion to respondent's section 243(h) application should prevail over a ruling by the Secretary of State to grant extradition. This suggestion can mean only that the Secretary of State, in his discretion, should defer to the grant of the benefits of section 243(h). There is no legal basis for the granting of such an application to take precedence over the Secretary of State's issuance of a warrant of extradition. If anything, in practice, the reverse would be true.

Treaties and statutes of Congress form part of the supreme law of the land and are of equivalent effect. Except to the extent that a treaty and a federal statute may be inconsistent, neither prevails over

---

[8] *Fong Yue Ting* v. *United States*, 149 U.S. 698, 709 (1893).

the other. If inconsistent, the expression of the Congressional will which is later in time prevails.[9] Nullification of a treaty by implication is not favored, however.[10]

Here there is no inherent inconsistency between, on the one hand, our Treaty of Extradition with Venezuela and the statutory provisions for extradition and, on the other, the statutory provisions of deportation, including withholding of deportation on the basis of impending physical persecution. Any inconsistency which might result would arise only from divergent applications of those provisions by different government officials. Statutes should be interpreted and applied, however, so as to render them harmonious and to give maximum effect to the provisions of each.

A decision by the Secretary of State granting extradition will terminate any deportation proceedings in whatever posture they might be at the time. Thus, although pending section 243(h) proceedings might support a request for reconsideration of the Secretary's decision, or for some form of judicial relief, failing either of those remedies the 243(h) proceedings would be effectively terminated. The same result would obtain if respondent had successfully prosecuted such application to a conclusion. Since the granting of the stay would not necessarily bar extradition, the stay of deportation might be abruptly terminated.

The Treaty requirement that Venezuela will try respondent only for the crimes specified in the warrant of extradition (for which the judge has already found probable cause) and the express prohibition against trial or punishment for a political crime or offense distinguish the extradition proceedings from these.[11] Only if Venezuela should, because of overriding political considerations, dishonor its obligations under the Treaty would the factors to be considered in the two proceedings merge. Moreover, if the Secretary of State considers whether Venezuela might physically persecute respondent, his conclusion on the overall likelihood of physical persecution might differ from a decision by the special inquiry officer, or by us, granting withholding of deportation.

The withholding of deportation authorized by section 243(h) of the Act may terminate at any time the Attorney General deems that de-

[9] *Fong Yue Ting* v. *United States*, supra [8]; *Ex parte Gin Kato*, 270 F. 343 (D.C., 1920); *In re Giacobbi*, 32 F. Supp. 508 (1939), aff'd *sub nom U.S. ex rel. Giacobbi* v. *Fluckey*, 111 F. 2d 297 (C.A. 2, 1940).

[10] *United States* v. *Domestic Fuel Corp.*, 71 F. 2d 424 (Cust. & Pat. App. 1934).

[11] The magistrate found that the evidence did not establish probable cause for the charges of murder and participation in murder as accessory before the fact. He also found that the financial crimes were not of a political character—hence not barred by Article III of the Treaty.

313

portation may be effected without subjecting the alien to physical persecution. Therefore, issuance of a warrant of extradition here might be considered basis for terminating any stay of deportation granted under section 243(h). In a sense the language of the Treaty and of the statutory provisions involved in respondent's case would all have been given effect. But the 243(h) proceedings would actually have served no useful purpose from the point of view of the determination of respondent's case.

As the Service motion and argument point out, such proceedings would serve only to complicate the extradition proceedings. We think they should not be made available for the purpose of bolstering up respondent's argument before the Secretary of State or providing a diversionary and distracting element in the overall proceedings involving respondent, which are already extensive. Orderly procedure requires deferral of any proceedings under section 243(h) until a final decision is rendered in the extradition case. Procedures under that section will be available to respondent if the extradition proceeding terminates in his favor, and if otherwise warranted at that time. We, therefore, deny respondent's motion solely on the grounds that it is inappropriate at this time.

Respondent contends that we lack authority to withdraw the outstanding deportation order.[12] The statutory provisions for deportation say that aliens in certain categories in the United States shall be deported upon the order of the Attorney General. Neither the statute nor the regulations limits the Attorney General's discretionary authority in the timing the the entry of such an order.

Respondent's counsel concedes that we have authority to withdraw an order of deportation in certain instances where the grounds for deportation have been eliminated or where certain applications for relief, such as suspension of deportation and voluntary departure, are to be granted.[13] He also concedes that entry of the deportation order could have been deferred in the first place.

Our general authority extends to exercising whatever discretion and authority—appropriate and necessary for the disposition of the case—the law confers upon the Attorney General in the matters before us for determination.[14] We do not doubt we have the discretionary power to withdraw the order of deportation if we deem such action warranted.

---

[12] In none of the cases cited by respondent to show that the Attorney General has a duty to deport after entry of a final order of deportation was an extradition proceeding pending along with the deportation proceeding.

[13] The Attorney General has held an outstanding order of deportation may be withdrawn to grant suspension of deportation. *Matter of B—*, 6 I. & N. Dec. 713.

[14] 8 CFR 3.1(d).

Only one argument of any force supports counsel's contention that, in respondent's case, entry and withdrawal of the deportation order is improper (although entry of the order might properly have been deferred in the first place). We consider such force is slight here. Counsel contends that the six-month period during which respondent might have been taken into custody under the present order has run. Thus, he argues, future reinstatement of that order after withdrawal would open up a new opportunity for respondent's confinement. We do not examine the legal basis for this contention. Assuming that counsel's statement of the situation is correct, we think the possibility he envisages is remote. If the deportation order is withdrawn, perhaps circumstances will not necessitate future reinstatement of deportation proceedings. If such proceedings are reinstated, perhaps a final order of deportation will not be entered. If a final order of deportation is entered, perhaps respondent will not be taken into custody under that order.

On the other hand, while the deportation order is outstanding respondent remains entitled to pursue his section 243(h) application. We have concluded that the deportation proceedings should not, during the pendency of the extradition proceedings, be reopened to enable respondent to be heard on that application. Withdrawal of the order of deportation removes the basis for the section 243(h) application.

There is only a vague possibility that respondent might in the future be prejudiced through consequences flowing from a reinstatement of the order of deportation. Against that possibility is the more immediate possibility of complicating the extradition proceedings if the deportation order remains in effect. Respondent may confine to the proceedings before the Secretary of State his argument that on political grounds he should not be extradited to Venezuela. If successful there, it is unlikely that he would have to argue further that his deportation to Venezuela should be withheld. But, if necessary, he could have full opportunity to present his case. The concurrent treaty and statutory procedures applicable to respondent may thus be given their maximum effect.

We decide here only a limited phase of the overall proceedings involving respondent. In the perspective of the entire applicable statutory and treaty provisions, however, orderly procedure requires withdrawal of the deportation order as well as deferral of further proceedings pertaining to deportation. We see nothing in the matters of more immediate concern to us which requires a different ruling. We shall grant the Service motion.

ORDER: It is ordered that respondent's motion to reopen the deportation proceedings to afford him an opportunity to be heard on his

application for the benefits of Section 243(h) of the Immigration and Nationality Act be and hereby is denied.

*It is further ordered* that the Service motion to withdraw the order of September 8, 1959, directing respondent's deportation, and to hold in abeyance the deportation proceedings be and hereby is granted.

*It is further ordered* that the order of September 8, 1959, directing respondent's deportation be and hereby is withdrawn and that any further deportation proceedings be held in abeyance during the pendency of the proceedings under the provisions of the Treaty of Extradition between Venezuela and the United States and applicable statutory provisions pertaining to extradition.