**Kulvir Singh BARAPIND,**
**Plaintiff–Appellant,**

v.

**Janet RENO, Attorney General,**
**Defendant–Appellee.**

No. 99–16668.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2000.

Filed Aug. 28, 2000.

1102

Karen Snell, San Francisco, CA, and Jagdip Singh Sekhon, San Francisco, CA, for appellant Kulvir Singh Barapind.

Christine A. Bither, Washington D.C., for appellee Janet Reno.

Before: LAY,[1] and D.W. NELSON, Senior Circuit Judges, and THOMAS, Circuit Judge.

THOMAS, Circuit Judge:

We confront the question of whether the Board of Immigration Appeals ("BIA") may hold the adjudication of petitioner's asylum application in abeyance pending the resolution of his parallel extradition proceedings in federal district court. We conclude that the BIA may do so, and affirm the judgment of the district court, albeit on different grounds.

## I

On April 25, 1993, the Immigration and Naturalization Service ("INS") detained Kulvir Singh Barapind as he attempted to enter the United States and charged him as an excludable alien. At exclusion proceedings, Barapind conceded that he was excludable, but applied for asylum and withholding of deportation based on persecution that he allegedly suffered because of his participation in a Sikh student group advocating the creation of a Sikh homeland in the Punjab, India.

The Immigration Judge ("IJ") denied Barapind's application and ordered him excluded. Along with her adverse credibility determination, the IJ looked to a Provisional Request for the Purpose of Extradition filed with the United States Department of State on November 29, 1994, by the government of India against Barapind alleging in thirty charges that he had injured eleven and killed fifty-two persons. Based on the allegations and information contained in the extradition documents, the IJ alternatively held that Barapind was ineligible for asylum "because he has killed people for their political opinions." The BIA affirmed the exclusion order. Barapind has been in custody continuously since his initial detention.

On August 3, 1994, Barapind filed a first habeas petition ("1994 petition") pursuant to § 106(a)(10) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1105a(a)(10) (1994), challenging the exclusion order in the United States District Court for the Central District of California. In a report and recommendation adopted by the district court, the magistrate judge sustained the IJ's adverse

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

credibility determination, but held that the BIA erred in its application of our case law in finding that Barapind should not be granted asylum. The district court remanded Barapind's case to the BIA to review the extradition documents to determine whether the allegations in those documents barred Barapind from obtaining asylum and withholding of deportation. *See* 8 U.S.C. § 1158(a).

Barapind appealed the order of remand to this Court. In an unpublished decision, we affirmed and enlarged the district court's order of remand. We first rejected the IJ's adverse credibility determination on several grounds. *See Barapind v. Rogers ("Barapind I")*, 114 F.3d 1193, 1997 WL 267881, *3 (9th Cir. May 15, 1997) (table). We also faulted the IJ for treating as established facts the criminal allegations made by the government of India against Barapind in the extradition request. *See id.* The district court complied with our decision by issuing a modified remand order on July 17, 1997, directing the BIA to readjudicate Barapind's asylum application.

On September 18, 1997, the United States, on behalf of the government of India, separately sought in United States District Court for the Eastern District of California Barapind's extradition to India to face the charges alleged in the 1994 extradition request. *See* 18 U.S.C. § 3184. Extradition was sought pursuant to the Treaty for the Mutual Extradition of Criminals between the United States of America and Great Britain ("1931 Treaty"), Dec. 22, 1931, U.S.-Gr. Brit., T.S. No. 849 (1932), made applicable to India from March 9, 1942, in accordance with article 14. *See* U.S. Dep't of State, Treaties in Force 132 (1999).

Because separate extradition proceedings had been initiated, the INS filed a motion—to which Barapind objected—to stay the exclusion and asylum proceedings pending before the BIA upon remand. On October 30, 1997, the BIA held Barapind's immigration proceedings in abeyance pending the outcome of the extradition proceedings.

Barapind then filed a complaint and second habeas petition—the basis of this appeal—in federal district court challenging the BIA's decision to stay his immigration proceedings. As relief, Barapind sought (1) a declaration and order directing the BIA to adjudicate his asylum application, and (2) an injunction against the defendants from extraditing or taking any other action that "interferes" with his right to a final adjudication of his asylum application.[2]

On the INS's motion to dismiss, the district court held it lacked subject matter jurisdiction over Barapind's claims after the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (1996), *as amended by* Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656 (1996), and on other grounds. *See Barapind v. Reno ("Barapind II")*, 72 F.Supp.2d 1132, 1138–40 (E.D.Cal.1999). Because it dismissed Barapind's claims for lack of subject matter jurisdiction, the district court did not reach the merits of Barapind's claims, except to hold that Barapind failed to state a claim for equitable estoppel or laches against the United States for having waited until 1997 to file the extradition complaint in federal court. *See id.* at 1158–60.

## II

### A

Extradition from the United States is governed by 18 U.S.C. § 3184 (2000), and

---

**2.** Barapind asserts three causes of action. He claims (1) that the BIA's refusal to adjudicate his application for asylum and withholding of deportation denied him his rights under the INA and the federal constitution; (2) that the INS's attempts to extradite him based on the extradition request submitted as part of the evidentiary record in his exclusion proceedings violates his due process rights and rights under the INA; (3) that the equitable doctrines of estoppel and laches bars the INS from attempting to extradite him at this late stage.

provides a separate and independent procedure from exclusion or removal proceedings initiated under the INA for the removal of an alien from the United States. *See Cornejo–Barreto v. Seifert,* 218 F.3d 1004, 1009–11 (9th Cir.2000); *McMullen v. INS,* 788 F.2d 591, 596 (9th Cir.1986); C. Gordon, S. Mailman, & S. Yale–Loehr, 1 Immigration Law and Procedure § 6.16 (2000); *see also* Restatement (Third) of Foreign Relations § 478, reporter's note 6 (1986).

The extradition process is ordinarily initiated by a formal request from a foreign government to the Department of State, which along with the Department of Justice, evaluates whether the request is within the scope of the relevant extradition treaty between the United States and the requesting nation. *See Cornejo–Barreto,* 218 F.3d at 1009. Once approved, the United States Attorney for the judicial district where the person sought is located files a complaint in federal district court seeking an arrest warrant for the person sought. *See id.* After a hearing, the district or magistrate judge must certify to the Secretary of State that "(1) the crime is extraditable; and (2) there is probable cause to sustain the charge." *Id.; see* 18 U.S.C. § 3184 ("the evidence [must be] sufficient to sustain the [charges brought in the extradition complaint] under the proper treaty or convention, or under [8 U.S.C.] section 3181(b)").

■ In addition to its probable cause determination, the district or magistrate judge must also assess whether any of the applicable treaty provisions bar extradition of the alien for any of the charged offenses. Under the 1931 Treaty, for example, a magistrate judge must determine whether any of the offenses charged are nonextraditable because they fall within a "political offense" exception.[3] *See* 1931 Treaty, art. 6; *Quinn v. Robinson,* 783 F.2d 776, 781 (9th Cir.1986); *see also Sandhu v. Bransom,* 932 F.Supp. 822, 826 (N.D.Tex.1996) (considering "political offense" exception under 1931 Treaty); *Extradition of Sandhu,* 886 F.Supp. 318, 323–24 (S.D.N.Y.1993) (same). The political offense exception generally prevents a person from being extradited "to face prosecution for crimes committed in furtherance of a political uprising, movement or rebellion in the country in which such occurrences are taking place." *McMullen,* 788 F.2d at 595.

■ If the magistrate or district judge determines that there is sufficient probable cause that an extraditable crime has been committed, and that the extradition treaty does not bar the extradition of the person sought, the district or magistrate judge must issue a warrant for the extraditee's arrest and detention. Although this decision is not subject to direct appeal, a limited collateral review of the magistrate or judge's order is available through habeas corpus review.[4] *See Cornejo–Barreto,* 218 F.3d at 1009 n. 5.

Once the magistrate has certified to the Secretary of State that the individual is extraditable and any habeas review has concluded, the Secretary in her discretion may determine whether the alien should be surrendered to the custody of the requesting state based on humanitarian or other concerns. *See* Gordon, Mailman & Yale–Loehr, at § 6.16; *United States v. Kin–Hong,* 110 F.3d 103, 109–10 (1st Cir. 1997). Many courts, including ours, have

---

**3.** Article 6 of the 1931 Treaty provides: "A fugitive criminal shall not be surrendered if the crime or offence in respect of which his surrender is demanded is one a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime or offence of a political character."

**4.** "On habeas, the district court's review has been limited to the following: (1) whether the extradition judge had jurisdiction to conduct the proceeding; (2) whether the extradition court had jurisdiction over the individual sought; (3) whether the extradition treaty was in force; (4) whether the crime fell within the treaty's terms; (5) whether there was probable cause that the individual sought committed the crime; and (6) whether the crime was within the political offense exception." *Cornejo–Barreto,* 218 F.3d at 1010 (internal citations omitted).

adhered to the general rule that it is not the role of the courts, but rather the Secretary of State, to determine whether extradition should be denied on humanitarian grounds. *See Cornejo–Barreto*, 218 F.3d at 1011 (citing *Lopez–Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir.1997)); *see also Sidali v. INS*, 107 F.3d 191, 195 n. 7 (3d Cir.1997); *Escobedo v. United States*, 623 F.2d 1098, 1107 (5th Cir.1980).

However, we have recently held that certain decisions by the Secretary of State in determining whether to extradite a fugitive are reviewable. In *Cornejo–Barreto*, we held that the Secretary of State has a "clear and nondiscretionary" duty pursuant to Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention"), implemented through the Foreign Affairs Reform and Restructuring Act ("FARR Act"), Pub.L. No. 105–277, § 2242, 1999 U.S.C.C.A.N. 871, and its implementing regulations to "consider[ ] the question of whether a person facing extradition from the U.S. 'is more likely than not' to be tortured in the State requesting extradition" when determining whether to surrender a fugitive to a foreign country by means of extradition. 218 F.3d at 1011, 1013 (quoting 22 C.F.R. § 95.2). Because the FARR Act imposes a "clear standard" against which to measure the Secretary's actions, we concluded that the Secretary's decisions regarding the extradition of a fugitive who claims that he will be tortured if returned is a final agency action reviewable by the courts pursuant to the Administrative Procedure Act ("APA"). *See id.* at 1013–14. We refused to consider Cornejo–Barreto's claims on the merits, however, because his petition was not ripe for adjudication as he had not been ordered extradited. *See id.* at 1015.

### B

Separately and independently from the extradition process, the INS may institute removal or exclusion proceedings against an alien who seeks entry or admission to the United States.[5] *See* Gordon, Mailman & Yale–Loehr, at §§ 64.01, 65.01; 8 U.S.C. §§ 1225, 1226 (1995). Exclusion proceedings ordinarily begin when an examining immigration officer at the port of entry detains an entering alien who is not "clearly and beyond a doubt entitled to land" for a hearing to be conducted before an IJ. 8 U.S.C. § 1225(b) (1995); *see* 8 C.F.R. Part 240, subpt. D; *see also* Immigration Law Service § 15.157 (rev. ed.1997). The IJ must then determine whether the alien is eligible for lawful immigrant or nonimmigrant status, and not within one of the grounds for exclusion. *See* 8 U.S.C. § 1182 (1995).

 Through section 201(b) of the Refugee Act of 1980 ("Refugee Act"), Congress established the statutory right of aliens in exclusion proceedings to request asylum and withholding of deportation. *See* Act of March 17, 1980, Pub.L. No. 96–212, 94 Stat. 107 (1980) (codified in scattered sections of 8 U.S.C.); 8 U.S.C. §§ 1158 and 1253(h). In enacting the Refugee Act, Congress sought to bring United States refugee law into conformity with the 1967 United Nations Protocol Relating to the Status of Refugees ("Protocol"), Jan. 31, 1967, 19 U.S.T. 6223, to which the United States acceded in 1968. *See Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 551–52 (9th Cir.1990). The Protocol incorporates the substantive provisions of Articles 2 through 34 of the United Nations Convention Relating to the Status of Refugees ("Refugee Convention"), July 28, 1951, 19 U.S.T. at 6259. Article 33 of the Conven-

---

**5.** IIRIRA eliminated the distinction between the "exclusion" and "deportation" proceedings under the pre-IIRIRA INA and replaced them with a single "removal" proceeding. *See* IIRIRA §§ 304 (*codified at* 8 U.S.C. §§ 1229–1229c), 306 (*codified at* 8 U.S.C.

§ 1252), 308(e) (codified in scattered sections of 8 U.S.C.), 309(d); *see also Kalaw v. INS*, 133 F.3d 1147, 1149 & n. 2 (9th Cir.1997). However, the removal procedure applies only to immigration proceedings initiated on or after April 1, 1997. *See id.* at 1150.

tion, entitled "Prohibition of Expulsion or Return ('Refoulement')," provides that:

> 1. No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.

19 U.S.T. at 6276. However, the Protocol was not intended to be self-executing, and serves only as a useful guide in determining congressional intent in enacting the Refugee Act. *See INS v. Stevic,* 467 U.S. 407, 428 n. 22, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *United States v. Aguilar,* 883 F.2d 662, 680 (9th Cir.1989).

Thus, once an alien in exclusion proceedings expresses fear of persecution or harm upon return to his country of origin to which the alien may be deported after an excludability determination, the IJ must advise the alien that he may apply for asylum and withholding of deportation. *See* 8 C.F.R. § 240.33(a); 8 U.S.C. § 1158(a). Once an alien applies for asylum, the IJ, after conducting an evidentiary hearing, must decide whether to grant asylum and withholding of deportation to those aliens who qualify as "refugees." *See* 8 C.F.R. § 240.33(c). A "refugee" is defined as an alien who is unwilling or unable to return to his or her country of origin due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see* 8 C.F.R. Part 208.

■ In a parallel, but converse, provision to the "political offense" exception to extradition, the INA excludes from withholding of deportation aliens for whom "there are serious reasons for considering that the alien has committed a serious nonpolitical crime." 8 U.S.C. § 1253(h)(2)(C); *see also* 8 U.S.C. §§ 1101(a)(42)(A) and 1253(h)(2)(A). However, the "political offense" determination in extradition proceedings and the "serious nonpolitical crime" assessment in immigration proceedings are separate and distinct inquiries. *See McMullen,* 788 F.2d at 596. A determination that an alien's acts are "political offenses" for purposes of denying extradition should have no effect on the BIA's determination of whether an asylum applicant has committed a serious nonpolitical offense because "extradition determinations have no *res judicata* effect in subsequent judicial proceedings." *Id.* at 597 (citing *Quinn,* 783 F.2d at 786 n. 3, 814 n. 36).

### C

Since the enactment of the Refugee Act, the effect of the extradition process on pending asylum proceedings has been infrequently explored. As a matter of course, the BIA has held deportation proceedings in abeyance while extradition proceedings are pending. *See Matter of Perez–Jimenez,* 10 I & N Dec. 309, 314 (BIA 1963); Gordon, Mailman, & Yale–Loehr, 6 Immigration Law and Procedure § 72.01[5]; Restatement (Third) of Foreign Relations § 478, reporter's note 6. In *Perez–Jimenez,* the BIA reasoned that holding asylum proceedings in abeyance pending completion of the extradition process was the preferred procedure because such proceedings would "complicate" the extradition proceedings and "[o]rderly procedure" necessitated the deferral of such proceedings. 10 I & N Dec. at 314. The BIA further noted that asylum proceedings "would actually have served no useful purpose" once a warrant of extradition was issued by the Secretary of State. *Id.* at 313–14. Courts have generally accepted the BIA's suspension of asylum proceedings pending the completion of the extradition process, although without comment. *See, e.g., INS v. Doherty,* 502 U.S. 314, 318–19, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); *McMullen,* 788 F.2d at 599–600.

A few courts have also dismissed for lack of jurisdiction collateral attacks on or attempts to enjoin extradition proceedings based on a pending deportation proceeding

or asylum application; however, they have done so without clearly articulating the jurisdictional deficiency. In *Smyth v. Christopher*, No. C–96–2324, slip. op. (N.D.Cal. Jul. 8, 1996), for example, the district court held that it was without jurisdiction to consider Smyth's claims that the INS was required to complete the asylum process before Smyth could be extradited. The court reasoned that the INA was not applicable to the extradition process, and that even if the INA were applicable, it did not create any jurisdiction to enjoin his extradition pending the completion of asylum proceedings.

In *LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C.Cir.1996), plaintiffs challenged the constitutionality of the federal extradition statutes and sought declaratory relief and an injunction barring their extradition. The court dismissed plaintiffs' claims for lack of jurisdiction because habeas relief was still available in the district court in which they were determined extraditable. *See id.* at 1082. In doing so, the court rejected the government's argument that the plaintiffs' suit should be dismissed on grounds of comity because of a pending habeas petition. *See id.*

In light of *Smyth* and *LoBue*, the district court in *Sandhu v. Reno*, 1996 WL 451053, *1 (D.D.C. Aug. 5, 1996), addressed claims similar to those raised in Barapind's petition, agreed with the *Smyth* rationale and held that it was without jurisdiction to enjoin the Secretary of State from proceeding with plaintiffs' extradition case while they pursued their asylum petition before the INS. The court also held that in light of *LoBue* a district court could not "entertain what is, essentially, a collateral attack on extradition or a renewed habeas petition." *Id.* "Nothing ... cited by plaintiffs establishes that anything in the Immigration and Nationality Act confers upon this court jurisdiction to restrain the Secretary of State from proceeding to issue an extradition warrant in light of the holding of the extradition judge that plaintiffs are extraditable." *Id.*

## III

We first address whether the district court properly dismissed Barapind's complaint and habeas petition for lack of subject matter jurisdiction. Although we hold that the district court did not err in declining jurisdiction on comity grounds to the extent that Barapind seeks to enjoin the extradition proceeding, we disagree with the district court's conclusion that IIRIRA § 242(g) otherwise precludes federal court jurisdiction.

### A

We first conclude that our prior remand order to the BIA rendered its initial decision on Barapind's asylum application non-final for the purposes of determining the applicability of IIRIRA § 309(c)(4) and that Barapind's asylum application is subject to IIRIRA's transitional rules.

IIRIRA § 309(c) delineates the applicable rules governing exclusion proceedings that were pending before the April 1, 1997, effective date. *See Kalaw*, 133 F.3d at 1150; *Hose v. INS*, 180 F.3d 992, 994–95 (9th Cir.1999) (*en banc*). Absent our earlier remand of Barapind's asylum proceedings to the BIA, the pre-IIRIRA INA would clearly govern Barapind's habeas petition since the BIA affirmed the IJ's excludability determination on July 26, 1994. *See* 8 C.F.R. § 3.1(d)(2) (BIA decisions "shall be final except in those cases reviewed by the Attorney General" or in cases returned to the INS or IJ for further proceedings); *see also Hose*, 180 F.3d at 994–95 (pre-IIRIRA INA applies where final exclusion order filed before October 30, 1996).

However, "when appellate review exists, what looks like a final status can well turn out not to be a final status." *See Butros v. INS*, 990 F.2d 1142, 1145 (9th Cir.1993) (noting that alien's status as a lawful permanent resident would be reinstated as of date of issuance of a BIA order reversed by court of appeals). Clearly, our remand

order did just this. The reversal of a BIA decision due to error in the BIA's holding "nullifies the finality of the deportation order." *Katsis v. INS*, 997 F.2d 1067, 1075 (3d Cir.1993); *cf. Matter of Lok*, 18 I & N Dec. 101, 107 (BIA 1981) ("In those relatively rare instances where the court [of appeals] determines that the [BIA] erred, as a matter of fact or law, with respect to its deportability finding, reversal of the [BIA]'s order of deportation *nullifies* the order and restores the alien's lawful permanent resident status.") (emphasis added).

Because the remand order nullifies the prior BIA decision, IIRIRA's transitional rules apply to Barapind's immigration proceedings, which have been pending since IIRIRA's enactment.

### B

■■ The district court dismissed Barapind's petition under the federal comity doctrine because (1) the petition was duplicative of the extradition proceeding; (2) the extradition proceeding was filed prior to Barapind's petition; and (3) the court's "inherent authority" allowed it to do so where Barapind failed to establish jurisdiction or a justification to stay the extradition case. *See Barapind II*, 72 F.Supp.2d at 1144–47. We review the district court's decision to dismiss under the federal comity doctrine for an abuse of discretion. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982).

■ The principles of comity allow a district court to decline jurisdiction over an action where a complaint involving the same parties and issues has already been filed in another district. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir.1991). "[W]hile no precise rule has evolved, the general principle is to avoid duplicative litigation," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and to promote judicial efficiency. *See Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir.1979); *see also Nakash v.*

*Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) ("It is enough if the two proceedings are 'substantially similar.' ").

■ Although Barapind's petition and complaint states that he seeks to "enjoin defendant's efforts to execute the extradition of Mr. Barapind to the government of India," Barapind's arguments focus primarily on why the BIA should be foreclosed from staying his pending asylum application. However, he does little to explain the source of the district court's authority to enjoin a pending extradition proceeding, which as we have stated forms a separate and independent proceeding from his asylum proceedings. Such relief, if available, must be sought through the extradition proceedings or on subsequent habeas review of an adverse decision in the extradition case. *See Mainero v. Gregg*, 164 F.3d 1199, 1205 (9th Cir.1999).

Nonetheless, the same reasons dictate that the district court cannot invoke the doctrine of comity to dismiss Barapind's claim that the BIA erred in holding his asylum proceedings in abeyance. Because Barapind's asylum application is separate from his extradition case, Barapind's efforts to compel adjudication of his asylum claims is neither duplicative of the extradition case, nor should they be barred because the extradition complaint was earlier filed. Therefore, the district court erred in dismissing Barapind's complaint based on the comity doctrine to the extent that he seeks to compel adjudication of his asylum application.

### C

■ 8 U.S.C. § 1252(g) also does not preclude the federal courts from exercising jurisdiction over Barapind's § 2241 habeas petition. *See* IIRIRA § 306(c)(1) (making § 1252(g) applicable to all past, pending and future exclusion and deportation proceedings). The existence of subject matter jurisdiction is a question of law which we review *de novo*. *See Naranjo–*

*Aguilera v. INS,* 30 F.3d 1106, 1109 (9th Cir.1994).

 Neither IIRIRA's permanent nor transitional rules repeal the statutory habeas corpus remedy available via 28 U.S.C. § 2241. *See Flores–Miramontes v. INS,* 212 F.3d 1133, 1136–38 (9th Cir. 2000); *Magana–Pizano v. INS,* 200 F.3d 603, 609 (9th Cir.1999). The scope of habeas review under § 2241 extends both to constitutional and statutory questions. *See id.; Reno v. American–Arab Anti– Discrimination Committee,* 525 U.S. 471, 477–78, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). Habeas review under § 2241 also extends to claims brought under the doctrine of equitable estoppel, *see Sulit v. Schiltgen,* 213 F.3d 449, 453 (9th Cir.2000), and by extension, to claims brought under the equitable doctrine of laches.

We also need not consider whether § 1252(g) forecloses our ability to determine whether the BIA's decision to stay asylum proceedings was proper because the BIA's stay order implicates a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." *See* 8 U.S.C. § 1252(g). A direct corollary to our holding that § 1252(g) does not repeal the availability of habeas relief is that that provision also does not "modify or amend" the scope of our habeas review. *See Flores–Miramontes,* 212 F.3d at 1138 & n. 6; *Magana–Pizano,* 200 F.3d at 608. Thus, the scope of our habeas review of the BIA's decision to stay Barapind's asylum proceedings is not limited by § 1252(g).

Finally, Barapind satisfies the rigors of § 2241, which requires that a habeas petitioner be "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241. Although Barapind is not subject to a final order of deportation, Barapind is presently in physical custody and is effectively without recourse while the BIA holds his case in abeyance. Therefore, he satisfies the "in custody" requirement. Moreover, Barapind sufficiently alleges that his custody is in violation of the laws and treaties of the United States.

In sum, the district court erred in its determination that it could not exercise habeas jurisdiction over Barapind's statutory claims pursuant to § 2241. Because jurisdiction is proper under § 2241, we need not consider Barapind's jurisdictional arguments under 28 U.S.C. § 1331 and the APA.

### D

 The district court also erred in dismissing Barapind's instant petition under the abuse of the writ doctrine as duplicative of the 1994 habeas petition challenging the BIA's denial of his asylum application. We review for abuse of discretion the district court's denial of a claim based on the abuse of the writ doctrine. *See Campbell v. Blodgett,* 997 F.2d 512, 516 (9th Cir.1992).

In reaching its decision, the district court first determined that the "gatekeeping provisions" set forth in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applied to "second or successive" petitions filed pursuant to § 2241. *See Barapind II,* 72 F.Supp.2d at 1144. It then held that Barapind's § 2241 petition duplicated the claims presented in his 1994 habeas petition filed in the Central District of California pursuant to INA § 106(a)(10) and dismissed the petition as an abuse of the writ. *See id.* at 1143–44. Barapind claims that the district court erred because unlike his 1994 petition, he now challenges the BIA's decision to hold his case in abeyance pending the outcome of the extradition case and seeks only an order compelling readjudication of his asylum application.

 "The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." *McCleskey v. Zant,* 499 U.S. 467, 470, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In

*McCleskey*, the Supreme Court examined the scope and procedure of the abuse of the writ doctrine:

> When a prisoner files a second or subsequent habeas petition, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's ... If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

*Id.* at 494–95, 111 S.Ct. 1454.[6] In large part, AEDPA codified the abuse of the writ doctrine and created a "gatekeeping" mechanism restricting the filing of second or successive habeas applications in district court. *See Felker v. Turpin*, 518 U.S. 651, 663–64, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Calderon v. U.S. Dist. Ct.*, 163 F.3d 530, 538 (9th Cir.1998), *cert. denied*, 526 U.S. 1060, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999).

 However, the gatekeeping provisions of AEDPA, as set forth in 28 U.S.C. § 2244, do not apply to all habeas petitions, nor are all multiple collateral attacks "second or successive." First, the prior-appellate-review mechanism set forth in § 2244(b) requires the permission of the court of appeals before "a second or successive habeas corpus application under section 2254" may be commenced. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir.1998); 28 U.S.C. § 2244(b). Because § 2244(b) makes no reference to habeas petitions filed under § 2241, but rather, applies only to petitions filed pursuant to 28 U.S.C. § 2254, the prior-appellate-review provisions of § 2244(b) do not apply

to habeas petitions filed under § 2241. *See id.* (citing *Felker*, 518 U.S. at 662–63, 116 S.Ct. 2333).

 Similarly, § 2244(a) does not bar Barapind's habeas challenge to the BIA's decision to hold his asylum application in abeyance. Section 2244(a) allows district judges to refuse to entertain a habeas petition "to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior" habeas petition, except as provided in § 2255. 28 U.S.C. § 2244(a). As noted by the Seventh Circuit, § 2244(a) prevents a federal inmate from using § 2241 "to call into question the validity of a conviction or sentence that has already been subject to collateral review." *Valona*, 138 F.3d at 694; *but see Davis v. Fechtel*, 150 F.3d 486, 490–91 (5th Cir.1998) (refraining from expressly deciding whether § 2244(a) applies to § 2241 habeas petitions). However, § 2244(a) cannot apply to a § 2241 petition filed by an INS detainee such as Barapind because § 2244(a) bars successive petitions seeking review of the propriety of a detention *"pursuant to a judgment of a court of the United States." See Felker*, 518 U.S. at 662–63, 116 S.Ct. 2333; *cf. Triestman v. United States*, 124 F.3d 361, 373 & n. 17 (2d Cir.1997) (noting that AEDPA limits second habeas petitions brought by "federal prisoners"). Barapind's detention, however, was not pursuant to a judgment of a court of the United States. As such, the district court erred in applying AEPDA's gatekeeping provisions to Barapind's § 2241 petition.

The instant petition filed by Barapind does not constitute a second, successive or subsequent petition under the abuse of the writ doctrine. Although neither the case

---

**6.** The government did not raise the abuse of the writ issue in its motion to dismiss before the district court. Rather, the district court *sua sponte* determined that Barapind's habeas petition was an abuse of the writ. *Cf.* *Williams v. Whitley*, 994 F.2d 226, 231–32 (5th Cir.1993) (while district court may find abuse of the writ *sua sponte*, it must provide petitioner with opportunity to respond to charge).

law nor AEDPA expressly define what constitutes a second, successive or subsequent habeas petition, the courts provide some guidance as to situations in which a subsequent habeas petition may run afoul of the abuse of the writ doctrine under both pre- and post-AEDPA case law. *See Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 1604–05, 146 L.Ed.2d 542 (2000) ("second or successive" petition under AEDPA is "a term of art given substance in our prior habeas corpus cases"); *Chambers v. United States,* 106 F.3d 472, 474 (2d Cir.1997); *United States v. Orozco-Ramirez,* 211 F.3d 862 (5th Cir.2000); *United States v. Barrett,* 178 F.3d 34, 44 (1st Cir.1999) (categorizing and compiling cases), *cert. denied,* —— U.S. ——, 120 S.Ct. 1208, 145 L.Ed.2d 1110 (2000). For example, under the pre-AEDPA abuse of the writ doctrine, a numerically successive petition was not a "second or successive" petition if it attacked a different criminal judgment from the earlier petition or the first petition terminated without a judgment on the merits. *See Barrett,* 178 F.3d at 43.

In *Stewart v. Martinez–Villareal,* 523 U.S. 637, 645, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), a state inmate on Arizona's death row filed a second habeas petition pursuant to 28 U.S.C. § 2254 in which he claimed that he was incompetent to be executed. His initial habeas petition raising the same claim had been dismissed by the district court as premature because his execution was not imminent at the time of its filing. *See id.* The Supreme Court held that the second petition was not a "second or successive" petition within AEDPA. "To hold otherwise would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Id.; see also Slack,* 120 S.Ct. at 1605–06 (no abuse of the writ where initial habeas petition was dismissed for failure to exhaust state remedies); *In re Turner,* 101 F.3d 1323 (9th Cir.1996) (*per curiam* ) (same).

Our sister circuits also have held that a habeas petition subsequent to a successful initial habeas petition is not a "second or successive" petition to the extent that the petitioner challenges the amended portion of a judgment or sentence. *See, e.g., In re Taylor,* 171 F.3d 185, 187–88 (4th Cir.1999) (petitioner's first opportunity to assert new issues arising at resentencing hearing); *Esposito v. United States,* 135 F.3d 111, 113 (2d Cir.1997) (*per curiam* ) (motion to challenge amended aspect of resentencing was not "second or successive" petition where initial motion to vacate resulted in resentencing); *Walker v. Roth,* 133 F.3d 454, 455 (7th Cir.1997). Finally, in *Chambers,* an AEDPA case, the Second Circuit held that because § 2255 and § 2241 offer relief for different types of claims the filing of a § 2255 motion after the filing of a § 2241 petition does not trigger the gatekeeping provisions as long as the respective petitions are properly labeled. *See* 106 F.3d at 475.

These cases compel the conclusion that the district court abused its discretion in finding that Barapind's instant § 2241 petition is an abuse of the writ. Barapind challenges only the BIA's decision to hold his asylum application in abeyance pending the outcome of the extradition proceedings. In contrast, the 1994 petition, brought pursuant to INS § 106(a)(10) and not § 2241, challenged the BIA's order denying his application for asylum and order of exclusion. At root, Barapind's present habeas claim arises out of the success of his initial petition before this Court, and he only seeks recourse of actions taken by the BIA as part of remanded proceedings. *See Taylor,* 171 F.3d at 187–88.

## IV

Having navigated our way through the numerous jurisdictional shoals, we reach Barapind's primary arguments on the merits. He maintains (1) that the INA and its implementing regulations mandate that the BIA adjudicate his asylum application and that its failure to do so constitutes a due process violation; (2) that the Refugee Act preempts conflicting provisions of the

1931 Treaty because it was enacted later in time; and (3) that the BIA stay violates an order of an Article III court requiring the BIA to adjudicate his asylum application. Each of these contentions fail.

### A

Barapind first points to the INA's implementing regulations and the structure of the INS's adjudicatory procedures to assert that the BIA's decision to hold his asylum application in abeyance violates his statutory and constitutional rights. He argues that once a completed asylum application is filed with the IJ, the IJ is mandated to adjudicate the claims of each asylum applicant. *See* 8 C.F.R. § 208.9 (the Attorney General "*shall* adjudicate the claim of each asylum applicant whose application is complete") (emphasis added); *cf. id.* § 208.14(c)(2) (if alien appears excludable to asylum officer, the officer *shall* either grant asylum or refer the application to an IJ for adjudication in asylum proceedings). However, the required adjudication by the IJ must be considered within the context of a comprehensive set of rules which govern the asylum process within exclusion proceedings. *See generally* 8 C.F.R. Pt. 240, subpt. D.

8 U.S.C. § 1158(a) mandates that an alien be permitted to apply for asylum "irrespective of status." *See also* 8 U.S.C. § 1253(h). The INS regulations reflect this requirement in exclusion proceedings: the IJ must notify an alien of his right to apply for asylum once the alien in exclusion proceedings expresses a fear of persecution or harm upon return to his country of origin. *See* 8 C.F.R. § 240.33(a). Once an asylum application is filed with the IJ, the IJ is required to calendar the case for an evidentiary hearing and to forward a copy of the application to the Department of State. *See id.* § 240.33(b), (c).

The adjudication of an asylum application within an exclusion proceeding before an IJ is a formal, adversary process governed by rules of procedure set forth in the INS regulations. *See generally* 8 C.F.R. Part 240, subpart D (procedural rules governing exclusion proceedings); 8 C.F.R. Part 3 (providing rules of procedure for immigration courts). A transcribed evidentiary hearing must be held before an IJ with testimony of witnesses, including the applicant, taken under oath. *See* 8 C.F.R. §§ 3.3, 240.33(c). A formal decision is made by the immigration judge to grant or deny asylum or withholding of deportation; an adverse decision must state why asylum or withholding of deportation was denied. *See* 8 C.F.R. § 240.33(d). The IJ's decision is subject to appeal to the BIA. *See* 8 C.F.R. § 240.37; *see also* 8 C.F.R. §§ 3.25–3.38.

Moreover, formal rules of procedure govern the conduct of immigration court proceedings generally, as well as appeals to the BIA. *See generally* 8 C.F.R. Part 3, subpt. C. However, INS regulations specifically reserve to the IJ and BIA the power to "exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case," subject to specific limitations provided for in the regulations. 8 C.F.R. §§ 3.1(d)(1), 240.31; *see also* 8 C.F.R. § 240.33(c)(2); *cf. Bowes v. District Director,* 443 F.2d 30 (9th Cir.1971) (pendency of collateral immigration application does not entitle alien to stay of deportation proceedings). Although the regulations do not specifically provide the BIA with the authority to stay exclusion or deportation proceedings, it is axiomatic that decisions to grant or deny motions to defer or continue deportation or exclusion proceedings are vested in the sound discretion of the trial judge and reviewed under an abuse of discretion standard. *See Gonzalez v. INS,* 82 F.3d 903, 908 (9th Cir.1996); *Rios–Berrios v. INS,* 776 F.2d 859, 862 (9th Cir.1985).

Within this framework, the BIA has determined that deportation and exclusion proceedings should be held in abeyance while extradition proceedings are pending. *See Matter of Perez–Jimenez,* 10 I & N Dec. at 314. Courts of appeals have authority to determine whether the IJ and BIA have correctly interpreted the regulations governing their jurisdiction. *See*

*Ghorbani v. INS,* 686 F.2d 784, 791 (9th Cir.1982). However, we must restrict our determination to whether the BIA's decision to stay asylum proceedings is reasonable, particularly in light of the deference due to an agency construing its own regulations. *See id.; Tooloee v. INS,* 722 F.2d 1434, 1436 (9th Cir.1983).

In *Perez–Jimenez,* the BIA reasoned that holding asylum proceedings in abeyance pending completion of the extradition process was the preferred procedure because such proceedings would "complicate" the extradition case and "[o]rderly procedure" necessitated the deferral of such proceedings given the overlapping concerns in an extradition case and an asylum application. 10 I & N Dec. at 314. The resolution of the extradition case has no preclusive effect over the disposition of the asylum application, and the BIA reasonably concluded that the Secretary of State's determination of whether to issue an extradition warrant should not be confined by collateral attacks resulting from the pendency of the asylum application. Therefore, the BIA acted reasonably and within the scope of its authority under § 3.1(d)(1) in holding Barapind's asylum proceedings in abeyance pending the completion of the extradition process. *See McMullen,* 788 F.2d at 593 (noting that deportation held in abeyance pending extradition proceedings).[7]

## B.

■■■ We also reject Barapind's contention that the 1931 Treaty cannot be applied to him because it precedes and conflicts with the Refugee Act. *See Fong Yue Ting v. United States,* 149 U.S. 698, 720–21, 13 S.Ct. 1016, 37 L.Ed. 905 (1893) (act of Congress prevails over prior treaty if conflict arises). Specifically, Barapind maintains that the BIA must adjudicate his asylum application to determine whether he is a "refugee" within the meaning of Article 33.1, because his extradition absent such an adjudication could violate the Protocol's mandate that a refugee cannot be returned "in any manner whatsoever" if his life or freedom would be threatened on the grounds set forth in the Protocol. Barapind's argument fails for two reasons. First, as discussed above, the BIA acted within its authority in staying exclusion proceedings pending the completion of the extradition process. Second, because Barapind has neither been adjudicated to be extraditable nor issued a warrant of extradition by the Secretary of State in her discretion, the issue of whether a conflict between the Refugee Act and the 1931 Treaty exists is not ripe for review.[8] *See Cornejo–Barreto,* 218 F.3d at 1015 *Hodgers–Durgin v. De La Vina,* 199 F.3d 1037, 1044 (9th Cir.1999) (*en banc*) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citation and internal quotation marks omitted). As noted in *McMullen,* if Barapind is determined not to be extraditable, the BIA may lift the stay on his

---

7. As an additional basis for staying asylum proceedings, the BIA noted that asylum proceedings "would actually have served no useful purpose" once a warrant of extradition was issued by the Secretary of State. *Matter of Perez–Jimenez,* 10 I & N Dec. at 313–14. In doing so, the BIA indicated that a decision by the Secretary of State to issue an extradition warrant would terminate any deportation or exclusion proceedings regardless of the procedural posture of the immigration proceeding. *See id.* We do not comment on the propriety of the BIA's determination that the issuance of an extradition warrant renders moot any pending asylum application because, as we state below, that issue is not

properly before us. We note, however, that this rationale does not form the basis of our inquiry into the reasonableness of the BIA's decision to hold Barapind's asylum application in abeyance pending completion of his extradition case.

8. *Quinn* noted *in dicta* that the Secretary of State's authority to refuse extradition may be constrained by treaty obligations, but determined that "the contours of executive branch discretion in this area have never been expressly delineated." 783 F.2d at 789. The Secretary's authority to refuse or require extradition is not before the panel, and is premature until an extradition decision is issued.

exclusion proceedings, consider his asylum application, and complete adjudication of his excludability. *See* 788 F.2d at 596.

## C

Barapind finally suggests in a claim rooted in Article III of the Constitution that the BIA's failure to adjudicate his asylum application violates the order of remand issued by the district court on our instructions. Barapind, however, provides no authority for this argument, and we find it without merit. *Cf. Heckler v. Day,* 467 U.S. 104, 118–19, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984) (declining to address whether lower court order "unduly intruded" upon discretion retained by agency to "adopt rules and procedures for the adjudication of claims"); 8 C.F.R. § 3.1(d)(1) (BIA empowered to exercise its discretion regarding matters within its jurisdiction).

## V

We affirm the district court's denial of Barapind's petition for habeas corpus. However, in light of the foregoing, we direct that the denial be entered without prejudice to the filing of a new habeas petition should the Secretary of State decide to surrender Barapind prior to the completion of the BIA's consideration of his application for asylum and withholding of deportation.

**AFFIRMED**