**Cecil SIMON, a.k.a. Cecil Jackson, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket No. 99–2411.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 18, 2003.

Decided: Feb. 19, 2004.

Brian Sheppard, New Hyde Park, NY, for Petitioner–Appellant.

Cecil C. Scott, Assistant United States Attorney, for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York (Peter A. Norling, Assistant United States Attorney, on the brief), for Respondent–Appellee.

Before: WALKER, Chief Judge, CALABRESI and STRAUB, Circuit Judges.

CALABRESI, Circuit Judge.

In *Adams v. United States,* 155 F.3d 582, 584 (2d Cir.1998) (per curiam), we held that district courts may not *sua sponte* convert post-conviction motions, putatively brought under some other provision, into motions pursuant to 28 U.S.C. § 2255 without first giving the petitioner notice and an opportunity to decline the conversion or withdraw the motion. The Supreme Court adopted this same rule in *Castro v. United States,* —— U.S. ——, ——, 124 S.Ct. 786, 792, 157 L.Ed.2d 778

(2003). In the case before us, we must determine whether a similar prescription applies to cases where such a motion is converted into a habeas petition pursuant to 28 U.S.C. § 2241. We conclude that it does. Accordingly, we vacate and remand for proceedings consistent with the opinion that follows.

*BACKGROUND*

Petitioner-appellant Cecil Simon was originally convicted in 1990, following a jury trial in the United States District Court for the Eastern District of New York (Sifton, *J.*) of one count of conspiracy to distribute more than 50 grams of cocaine base (the "drug" conviction), and one count of using a firearm in relation to that conspiracy (the "weapons" conviction). *See* 21 U.S.C. § 846; 18 U.S.C. § 924(c)(1). Simon was sentenced to 262 months' imprisonment on the drug count and a consecutive term of 60 months on the weapons count, for a total term of 322 months. In addition, the court below imposed four years of supervised release and a special assessment.

This court summarily affirmed Simon's conviction and sentence in April 1991. *See United States v. Simon,* No. 90–1540, 932 F.2d 955, 1991 WL 75668 (2d Cir.1991) (table). In December 1991, Simon filed a § 2255 motion alleging ineffective assistance of counsel. *See* 28 U.S.C. § 2255. The district court denied that motion, and his § 2255 appeal was dismissed by this court after he failed to comply with the briefing schedule. In August 1993, we denied Simon's motion to reinstate that appeal.

In 1996, Simon filed a motion pursuant to 18 U.S.C. § 3582(c)(2), seeking, *inter alia,* to vacate his weapons conviction in light of *Bailey v. United States,* 516 U.S. 137, 150, 116 S.Ct. 501, 133 L.Ed.2d 472

(1995). The district court observed that § 3582 was an inappropriate vehicle for Simon's claims and that § 2255 relief had become unavailable because of Simon's previous § 2255 motion. But the court did not, on that basis, dismiss the action. Instead, relying on *Triestman v. United States,* 124 F.3d 361 (2d Cir.1997)—where we held that litigants can pursue *Bailey* claims on a § 2241 motion even if a § 2255 motion raising the same challenge would be barred by the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214, 1220 (1996) ("AEDPA")—the court *sua sponte* restyled Simon's § 3582 motion as a § 2241 petition. The government had previously conceded that Simon's weapons conviction was invalid under *Bailey;* the court therefore vacated that conviction.

In July 1999, the court conducted re-sentencing for Simon's remaining drug conviction. Prior to that date, Simon filed papers, ostensibly under Fed.R.Civ.P. 33, alleging that he had been convicted on the basis of false testimony; that erroneous jury instructions amounted to a constructive amendment of the indictment; and that his trial counsel had been ineffective. At the re-sentencing hearing, Simon added the complaint that his present attorney—assigned for the re-sentencing—was of no help in preparing challenges to his drug conviction.[1]

The district court declined to address these claims, reasoning that they spoke to the part of his underlying conviction that had not been vacated and, hence, were inappropriately raised in the re-sentencing context. The court explained that these claims could be asserted in a new § 2255 motion, but that such a petition might well be barred by the AEDPA. Finally, concluding that counsel's unwillingness to pur-

---

**1.** He characterized their relationship as "like Judas representing Jesus."

sue certain legal challenges was "essentially right," the court declined to appoint different counsel. In calculating a new sentence, the court began with the offense level originally applied to Simon's drug conviction, but added a two-point enhancement under U.S.S.G. § 2D1.1(b)(1), which provides for such an increase where a defendant possesses a dangerous weapon in connection with a drug offense.[2] This yielded a final offense level of 39 and a sentencing range of 324 to 405 months' imprisonment. In order to avoid exceeding Simon's pre-vacatur sentence, however, the court—with the government's consent—departed downward and imposed a 322-month term of imprisonment, the same length as in the original sentence.

## DISCUSSION

On appeal, Simon, in a *pro se* brief, makes several claims regarding his sentence, his conviction, and the jurisdiction of the district court. His appointed counsel has also submitted a brief challenging the imposition of the two-point firearms enhancement. We need not, however, determine the validity of these claims, because we are met with a threshold question the answer to which will resolve this appeal: did the district court err in *sua sponte* converting Simon's § 3582 motion into a § 2241 petition?[3] For the reasons that follow, we deem the conversion improper.

The wellspring of our holding today is *Adams.* In *Adams* we noted that the

AEDPA "places stringent limits on a prisoner's ability to bring a second or successive" § 2255 motion. 155 F.3d at 583. In view of this, we reasoned that if a district court treats a motion filed under some other provision as a § 2255 motion, then the movant's one chance at § 2255 relief would be used up—without the movant's consent and despite the movant's possible ignorance of the consequences. "Thus a conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated." *Id.* With this in mind, we determined that district courts should not convert motions "purportedly made under some other rule" into § 2255 motions unless

> "(a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized." *Id.* at 584.

In a case decided just recently, the Supreme Court adopted precisely this prescription, citing *Adams* as well as cases from other circuits that had reached a

---

2. That enhancement was inapplicable at the original sentencing because Simon had been convicted of an independent weapons crime.

3. Reading Simon's *pro se* brief broadly as we are required to do, *see Ortiz v. McBride,* 323 F.3d 191, 194 (2d Cir.2003) (per curiam), we believe that he raised the propriety of the conversion when he argued, in challenging the court's personal jurisdiction over respondent, that "appellant did not seek judicial remedy under § 2241 and was not given opportunity to respond to the district court's

recharactorization [sic] of appellant's § 3582." But even if he had not challenged the conversion in his appellate papers, the Supreme Court has recently indicated that we should raise the issue *nostra sponte.* This is so because the "very point" of the *Adams* rule, which we explain below, is that petitioners who lack notice of the consequences of a recharacterization will not necessarily seek to contest it on appeal. *See Castro,* —— U.S. at ——, 124 S.Ct. at 793.

similar conclusion. *Castro*, —— U.S. at ——, 124 S.Ct. at 792 ("[W]hen a court recharacterizes a *pro se* litigant's motion as a first § 2255 motion[,] ... the district court must notify the *pro se* litigant that it intends ·to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or to amend it ....").

This rule unequivocally governs § 2255 motions, and we have recently extended it to § 2254 petitions, *see Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 282 (2d Cir. 2003). Does it also apply in the § 2241 context? Since *Adams* and *Cook* are premised on the AEDPA's heavy restrictions on successive § 2255 and § 2254 applications, our answer depends principally on whether the AEDPA's provisions similarly constrain a petitioner's ability to file successive § 2241 petitions.

There is no case in this circuit that has mapped the precise interactions between 28 U.S.C. § 2241 and the gatekeeping and successive petition regulations of the AEDPA. We have, in certain situations, found no AEDPA infirmity where a § 2255 motion follows a § 2241 petition (provided that the claims contained therein are appropriately raised through those respective vehicles), *see, e.g., Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir.1997), nor where a § 2241 petition follows a § 2254 petition (under the same conditions), *see James v. Walsh*, 308 F.3d 162, 166 (2d Cir.2002).[4] But at least two of our cases do indicate that the AEDPA requirements may pose a problem where a later § 2241 petition follows an earlier one.

First, in *Triestman*, we noted, in passing, that the AEDPA "also limits second and successive *habeas corpus* (§ 2241) petitions brought by federal prisoners."[5] 124 F.3d at 373 n. 17. We then followed that observation with a similar one in *Jiminian v. Nash*, 245 F.3d 144 (2d Cir.2001). *Jiminian* involved a case in which a petitioner, having already filed and lost on a § 2255 motion, submitted a § 2241 petition challenging the same conviction and sentence. *Id.* at 145–46. We instructed district courts that where a prior § 2255 motion has been dismissed on the merits, they should convert any § 2241 petition of this sort—one raising previously available claims appropriately the subject of a § 2255 motion—into a second and successive § 2255 motion.[6] *Id.* at 148. Noting

---

**4.** Although the question in *James* did not implicate two successive § 2241 petitions, the opinion at one point speaks in broader language: "AEDPA applies to petitions brought under the post-conviction remedy statutes, 28 U.S.C. §§ 2254 and 2255, but not to petitions ·brought under the traditional habeas statute, 28 U.S.C. § 2241." 308 F.3d at 166. *James* does not expand on this proposition, but cites to *Chambers, see id.*, suggesting that the court intended ·to do no more than apply the *Chambers* rule, with appropriate modifications, in the § 2254 context—not to settle the issue of second and successive § 2241 petitions. *See also Love v. Menifee*, 333 F.3d 69, 73 (2d Cir.2003) (characterizing § 2241 petitions in passing as "free of [gatekeeping] limitations").

**5.** For this proposition we cited 28 U.S.C. § 2244(a):

No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

**6.** This instruction was based on our observation in *Jiminian* that the *Adams* rule does not apply in cases where petitioners have previously filed for § 2255 relief. If they have already requested such relief, then converting

that "the AEDPA limits second and successive § 2241 petitions brought by federal prisoners," we reasoned, such a conversion would "preserve the right of federal prisoners to file a proper § 2241 petition." *Id.* at 148 (citing § 2244(a) and *Triestman,* 124 F.3d at 373 n. 17). In this manner, *Jiminian* strongly suggested that a successive § 2241 petition might well be subject to serious restrictions.[7]

Despite these comments, however, the questions of whether, in what circumstances, and under what constraints a petitioner may bring a second or successive § 2241 petition have not been definitively resolved in this circuit.[8] Nor have they been clearly answered by the Eleventh Circuit. The view of the Eleventh Circuit

is, of course, particularly germane to our disposition of this case because Simon is currently being held in a federal penitentiary in Georgia, and § 2241 habeas petitions normally are filed in the district where the petitioner's custodian resides—here, the Northern District of Georgia. Simon may well file—indeed he may have to file[9]—future § 2241 petitions in the Eleventh Circuit.

Other circuits have commented in greater detail on the interplay between the AEDPA and § 2241. Several have held that the gatekeeping provisions of § 2244(b), which establish a prior-appellate-approval mechanism for second or successive collateral attacks, do *not* apply to habeas petitions brought pursuant to

---

another form of motion into a § 2255 motion will not work to their disadvantage—their one, unimpeded § 2255 shot has already been fired. *See Jiminian,* 245 F.3d at 148. *But see Gitten v. United States,* 311 F.3d 529, 533 (2d Cir.2002) (noting that recharacterization of a motion as a second § 2255 could disadvantage a petitioner by making a subsequent properly prepared § 2255 motion vulnerable to dismissal under an "abuse of the writ" analysis).

7. In *Chambers,* decided before *Triestman* or *Jiminian,* we implicitly held that § 2244(a) permits courts to dismiss § 2241 habeas petitions when they raise claims that have already been decided on the merits in a prior § 2241 petition. *See* 106 F.3d at 475.

8. In a case that will come before this court for argument later this year, and that squarely raises these issues, the government has asserted that the AEDPA restrictions do apply to § 2241 petitions. *See Gittens v. Menifee,* No. 03–3623, Order (2d Cir. Dec. 2, 2003) (ordering appointment of counsel and briefing on the issue).

9. It is a complicated question whether a district court in the Eastern District of New York would normally have personal jurisdiction to hear Simon's § 2241 claims. *See, e.g., Padilla v. Rumsfeld,* 352 F.3d 695, 708–10 (2d Cir.

2003) (finding that the Secretary of Defense was amenable to service of process under the New York long-arm statute because he had "purposeful contacts" with the Southern District that "were substantially related to the [petitioner's] claims"); *Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998) (holding that a court has personal jurisdiction in a § 2241 habeas case " 'so long as the custodian can be reached by service of process' " as governed by state law) (quoting *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 495, 499, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)). In the instant case, this question need not be answered, because the government has explicitly waived any defects in personal jurisdiction. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (holding that unlike subject matter jurisdiction, a defect in personal jurisdiction can be waived). But if Simon sought to bring a *second* § 2241 petition, the government might not be so obliging; it may opt instead to challenge the exercise of jurisdiction by a district court in the Eastern District of New York over a Georgia custodian. In that event, and in the event that this court finds that absent waiver any § 2241 petition must proceed in district court in Georgia, or alternatively if Simon simply chose to proceed in Georgia, as he is entitled to do, he would be subject to the Eleventh Circuit's view on second and successive § 2241 petitions.

§ 2241. *See, e.g., Perez Zayas v. INS,* 311 F.3d 247, 255 (3d Cir.2002); *Barapind v. Reno,* 225 F.3d 1100, 1111 (9th Cir.2000); *Valona v. United States,* 138 F.3d 693, 694–95 (7th Cir.1998); *see also In re Curtis E. Crawford,* No. 03–3089, 2003 WL 22305103, 2003 U.S.App. LEXIS 20394, at *2 (D.C.Cir. Oct. 6, 2003) (unpublished per curiam; D.C.Cir. Local Rules 28(c)(1)(B), 36(c)(2)). These courts provided slightly different—though not necessarily inconsistent—answers, however, to the question of how, if at all, other provisions of the AEDPA restrain successive § 2241 petitions. *Valona* indicated that successive § 2241 petitions directed to new issues could proceed without hindrance from § 2244(a). *See* 138 F.3d at 695. *Barapind* found that while § 2244(a) may bar successive habeas petitions brought by federal prisoners, it does not bar such petitions brought by INS detainees because that provision applies only where petitioners challenge the propriety of a detention "pursuant to a judgment of a court of the United States." 225 F.3d at 1111 (internal quotation marks and emphasis omitted). *See also Rosales–Garcia v. Holland,* 322 F.3d 386, 398–99 (6th Cir.), *cert. denied sub. nom. Snyder v. Rosales–Garcia,* —— U.S. ——, 123 S.Ct. 2607, 156 L.Ed.2d 627 (2003) (applying pre-AEDPA law to successive petition filed by an INS detainee). And *Zayas,* like *Barapind,* held that the "abuse of the writ" analysis—based on the doctrine set forth in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)—is the applicable rule for determining whether a petitioner's second or successive § 2241 petition should be dismissed. 311 F.3d at 256 (quoting *Barapind,* 225 F.3d at 1111).

Future decisions of this court will more clearly delimit what constraints, if any, apply to the filing of a second or successive § 2241 petition in our circuit. Under the present circumstances, however, a habeas petitioner is far from assured that a *sua sponte* conversion will not have serious ill effects on future efforts to pursue § 2241 relief, either here or in the Eleventh Circuit. Thus, a second habeas petition of this sort might well trigger the successive petition restrictions of the AEDPA with respect to any such attempt.

Nor can *Adams* reasonably be limited to § 2255 and § 2254 motions. For its principles and its prescription apply with equal force to any situation in which a person may have only a limited number of unencumbered opportunities to seek a certain form of relief. And that is the case here: *Sua sponte* conversion of Simon's § 3582 motion into a § 2241 petition may well, based on the foregoing, have an adverse impact on his ability to file, and prevail on, another such motion in the future. In *Adams,* we held that the rule set forth therein would persist "[a]t least until it is decided whether such a conversion or recharacterization can affect the movant's right to bring a future habeas petition." 155 F.3d at 584. The application of this rule to § 2241 petitions will persist "at least until it is decided" if and when petitioners can file more than one § 2241 petition. District courts must therefore give notice, and obtain consent, before construing a petitioner's filing as a § 2241 petition.

In its recent decision approving this requirement with respect to § 2255 motions, the Supreme Court characterized the requirement as an application of Federal Rule of Appellate Procedure 47(b), which empowers a court of appeals to "regulate practice in a particular case." *See Castro,* —— U.S. at ——, 124 S.Ct. at 792. It is certainly that, but it might, however, be more than a guideline of judicial administration. Because absence of the requirement—in the § 2241 context and others—might limit, and in some cases deprive,

petitioners' access to judicial review without regard to whether they understood and accepted the consequences of the district courts' *sua sponte* action, the *Adams* rule raises due process concerns. As such, it might apply even to situations outside the scope of our regulatory authority.[10]

The question remains, in the instant case, whether the recharacterization at issue was voluntary, given that Simon, who was *pro se* at the time, permitted conversion of the § 2241 petition without objection.[11] As a provisional matter, we note that it is unlikely that Simon's silence can save the court's recharacterization. For the Supreme Court has stated, "the very point of the warning is to help the *pro se* litigant understand not only (1) whether he should withdraw or amend his motion, but also (2) whether he should *contest* the recharacterization, say, on appeal." *See Castro,* —— U.S. at ——, 124 S.Ct. at 793. But we need not decide whether Simon consented to the conversion, *sub silentio,* because the government did not press his failure to object in briefing before this court. It has therefore relinquished the argument that Simon waived any *Adams* infirmity. *See Atkins v. New York City,* 143 F.3d 100, 103 (2d Cir.1998) (noting that litigants can "waive[ ] the waiver point").

## CONCLUSION

In view of the various potential obstacles to relief on successive § 2241 petitions,

and in the absence of Simon's consent, we find that the district court's *sua sponte* recharacterization of his § 3582 motion as a § 2241 petition was improper. Accordingly, the judgment of the district court is VACATED and the case REMANDED to give Simon an opportunity to decline to have his § 3582 motion converted into a § 2241 petition.[12]

10. To decide the case before us, we need not, and hence do not, decide whether the *Adams* rule applies to such situations.

11. Over the life of this case, Simon has alternately proceeded with counsel and *pro se.* His § 3582 motion was filed *pro se,* and he was unrepresented when the district court converted the motion, granted the petition, and vacated the firearms conviction. It was only upon vacatur—and specifically for purposes of re-sentencing—that counsel was assigned.

12. In this respect, we are following the procedure adopted in *Cook,* a § 2254 case. *See* 321 F.3d at 282. If Simon opts to decline, he is then free to pursue whatever relief he may have available, in whatever venue available, issues as to which we express no view. If instead, upon receiving notice of the consequences of conversion, he elects to proceed, the district court should act on the converted § 2241 petition.