**Duaut A. DUAMUTEF, Plaintiff–Appellant,**

**v.**

**IMMIGRATION AND NATURAL-IZATION SERVICE, Defendant–Appellee.**

**Docket No. 03–2450.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 7, 2004.

Decided: Sept. 23, 2004.

---

Duaut A. Duamutef, pro se, Wood-bourne, NY, for Plaintiff–Appellant.

Dione M. Enea, Special Assistant United States Attorney for the Eastern District of New York (Varuni Nelson, Assistant United States Attorney, of counsel; Roslynn R. Mauskopf, United States Attorney, on the

brief), Brooklyn, NY., for Defendant–Appellee.

Before: WINTER, JACOBS, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge.

Plaintiff–Appellant Duaut Duamutef, *pro se*, appeals from a judgment of the United States District Court for the Eastern District of New York (David G. Trager, *Judge*) entered May 21, 2003, dismissing Duamutef's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and for a writ of mandamus pursuant to 28 U.S.C. § 1361.

## BACKGROUND

### A. Duamutef's State Conviction and the Ensuing Deportation Proceedings

Duamutef, a native and citizen of Jamaica, entered the United States in 1980. Four years later, in the Supreme Court of New York, New York County, Duamutef was convicted after a jury trial of murder in the second degree, in violation of section 125.25 of the New York Penal Law. He was sentenced to a term of 15 years to life imprisonment.

As a result of that conviction, in 1993, while Duamutef was serving his sentence, the Immigration and Naturalization Service ("INS")[1] initiated deportation proceedings against him by serving him with an order to show cause. The INS alleged that Duamutef was deportable pursuant to sections 241(a)(1)(B) and 241(a)(2)(A)(i) of the Immigration and Nationality Act of 1952 ("INA"), then codified at 8 U.S.C. § 1251(a)(1)(B), (a)(2)(A)(i), for entering the United States without inspection and for having been convicted of "a crime involving moral turpitude committed within five years of entry and sentenced to confinement or hav[ing] been confined therefor in a prison or correctional institution for one year or longer."

On June 16, 1994, based on the INS's charges (which were not contested by Duamutef), an immigration judge ("IJ") ordered Duamutef deported to Jamaica. The IJ's order indicates that Duamutef waived his right to file an appeal with the Board of Immigration Appeals ("BIA"). As a result, the deportation order became final when it was issued on June 16. The INS filed a detainer with the state authorities in the event that Duamutef is granted a discretionary release.[2]

### B. Duamutef's CPDO Status

In 1997, Duamutef completed the minimum term of his state sentence and became eligible for parole. The New York State Parole Board (the "Parole Board") denied Duamutef's request for parole, stating that his release would be "incompatible with the interest of society" in light of "the severity of the instant offense." The Parole Board did, however, grant Duamutef

---

**1.** Pursuant to the Homeland Security Act of 2002, Pub.L. 107–296 § 441, 116 Stat. 2135 (2002); 6 U.S.C. § 202(3), on March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice and its functions were transferred to the Department of Homeland Security. The United States Immigration and Customs Enforcement ("ICE"), a bureau within the Department of Homeland Security, now bears responsibility for enforcing the immigration laws. *See* Immigration and Customs Enforce-

ment ("ICE") Fact Sheet (Mar. 31, 2004), *available at* http://www.ice.gov/graphics/news/factsheets/iceFS033104.htm. To be consistent with the District Court order and because the rulings at issue in this case were made when the agency was still the INS, we refer to the relevant agency as the INS in this opinion.

**2.** Oddly, neither of the parties filed a copy of the detainer notice with the court.

Conditional Parole for Deportation Only ("CPDO") on or after June 3, 1997, but not later than June 1999.

Under New York state law, once an inmate who is subject to deportation by the INS has served his minimum period of incarceration, the Parole Board "may consider, as a factor warranting earlier release, the fact that such inmate will be deported, and may grant parole to such inmate conditioned specifically on his prompt deportation." N.Y. EXEC. LAW § 259–i(2)(d)(i) (McKinney 2004). A CPDO is not to be issued unless the Parole Board has received assurance from the INS that (i) upon the inmate's release from state custody, "an order of deportation will be executed" or deportation proceedings "will promptly be commenced" and (ii) the inmate will not be released from INS custody, except as a result of his deportation, "without providing the board a reasonable opportunity to arrange for execution of its warrant for the retaking of such parolee." *Id.* An inmate who is granted a CPDO is not released to parole supervision; rather, he is to be "delivered to the custody" of the INS. *Id.* § 259–i(2)(d)(ii). In practice, according to the New York State Division of Parole, there is no INS holding facility to which inmates like Duamutef are delivered upon the issuance of a CPDO. Instead, once the Division of Parole informs the INS that an inmate is available to be transferred into INS custody, "it is ... the responsibility of the INS to come to the facility" and take the inmate into custody.

Despite having been alerted to Duamutef's CPDO status, the INS did not take him into custody. As a result, the Parole Board revoked Duamutef's CPDO when he reappeared before it in June 1999. Two years later, the Parole Board reinstated the CPDO but again denied Duamutef discretionary release. In a decision dated July 2, 2001, the Parole Board advised Duamutef of its specific reasons for denying him parole:

> Your crime of conviction ... involved you shooting a man 6 to 8 time[s] causing his death. Your actions demonstrate how you value human life. During the interview[,] you never answered the board[']s questions about what you have learned from your prison experience nor showed any remorse for the victim. You refused to accept responsibility for the crime for which you were convicted. This panel is aware of your positive programming and your clean disciplinary record, but the cold blooded nature of the instant offense and your inability to demonstrate how you have changed ... lead[ ] this panel to conclude you are not ready for community reentry.

According to Duamutef, he appeared before the Parole Board for a fourth time on July 16, 2003 and was again granted a CPDO.

Although the INS is aware of Duamutef's status, it has not yet accepted custody of him under the terms of the CPDO. The government explains that, as a matter of standard policy, the INS will not "accept custody of a deportable alien from the state until the alien is under a final order of deportation and it is possible to immediately execute the deportation order." In this case, the INS is not prepared to immediately deport Duamutef because it is still in the process of obtaining a necessary travel document for him. According to the government, without that document, Jamaica will not accept Duamutef for repatriation. As a result, Duamutef remains in the physical custody of the New York State Department of Corrections, serving his prison sentence.

Prior to filing the instant petition in federal court, Duamutef made several un-

successful efforts to obtain relief in other fora. He has filed inmate grievance reports and written letters to, *inter alia*, the New York State Governor, his United States Senator, the United States Attorney General, the INS regional office, and the Jamaican Consulate. He also filed a habeas petition in New York Supreme Court, Dutchess County, seeking an order directing the respondents, state prison and parole officials, to deliver him into INS custody. That court denied Duamutef's petition, holding that the respondents satisfied their statutory obligations by promptly notifying the INS of Duamutef's CPDO status (and availability for deportation) and explaining that the INS "has the sole authority to determine whether and when an inmate who has a deportation order filed against him will actually be deported."

## C. Procedural History

In February 2002, Duamutef, *pro se*, initiated the instant action against the INS, challenging his continued confinement by state authorities and seeking an order compelling the INS to execute the final order of deportation issued against him. The District Court construed Duamutef's petition, originally styled as a 28 U.S.C. § 2254 habeas petition, as both a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a petition for a writ of mandamus under 28 U.S.C. § 1361.[3] *See Duamutef v. INS*, No. CV–02–1345, 2003 WL 21087984, at *1 (E.D.N.Y. May 14, 2003).

In an order dated May 14, 2003, the District Court dismissed the petition, holding that (i) it lacked jurisdiction to review Duamutef's § 2241 habeas claim because he was not in the custody of the INS, and (ii) Duamutef was not entitled to mandamus relief under § 1361. As to its habeas jurisdiction, the District Court acknowledged that in *Simmonds v. INS*, 326 F.3d 351, 356 (2d Cir.2003), we held that when a petitioner is subject to a final order of removal,[4] the § 2241 custody requirement

---

**3.** In light of the arguments asserted and the relief sought, the District Court's construction of Duamutef's petition seems appropriate. *See* 28 U.S.C. § 2241(c)(3) (authorizing issuance of writ of habeas corpus to prisoner being held "in custody in violation of the Constitution or laws ... of the United States"); 28 U.S.C. § 1361 (providing cause of action in federal court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"). In respect of the § 2241 claim, however, it is not clear that the District Court followed the proper procedures for such a recharacterization. *See Simon v. United States*, 359 F.3d 139, 145 (2d Cir. 2004) (holding that the district court's "*sua sponte* recharacterization" of the petitioner's post-conviction motion (brought pursuant to a different section of United States Code (18 U.S.C. § 3582)) as a § 2241 petition without securing the petitioner's informed consent "was improper" because of the statutory limits placed on successive § 2241 petitions). We need not resolve this question because, as outlined *infra*, we dismiss Duamutef's § 2241

petition on jurisdictional grounds. Duamutef would only be prejudiced by the District Court's recharacterization and dismissal of his § 2241 petition if the dismissal were on the merits. *Cf. Chambers v. United States*, 106 F.3d 472, 475 (2d Cir.1997) (dismissing petitioner's § 2241 petition under 28 U.S.C. § 2244(a) because a previous § 2241 petition raising the same claims had "already been decided on its merits"); *see also Simon*, 359 F.3d at 143 n. 7 (characterizing *Chambers* as "implicitly" holding "that § 2244(a) permits courts to dismiss § 2241 habeas petitions when they raise claims that have already been decided on the merits in a prior § 2241 petition").

**4.** In 1996, Congress amended the INA to add new provisions governing judicial review of immigration orders. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208 § 242, 110 Stat. 3009–546 (1996) (codified as amended at 8 U.S.C. § 1252). Where the old statute referred to orders of "deportation,"

is met. *See Duamutef,* 2003 WL 21087984, at *2. The court distinguished *Simmonds,* however, by noting that the petitioner in that case was challenging his final order of removal:

> Here, Duamutef is subject to a final order of removal as well as a detainer, and, as in *Simmonds,* his subsequent confinement by the INS is required by statute. However, even under *Simmonds,* constructive custody is only available insofar that a petitioner is challenging the future confinement; jurisdiction would, therefore, exist to review Duamutef's petition only to the extent it challenges the prospective INS custody. However, Duamutef is neither challenging his final order of removal nor his eventual INS confinement. He is challenging his current confinement—by the state authorities—claiming that his current confinement is the result of INS inaction.

*Id.* at *3.

The court disposed of Duamutef's mandamus petition because it found that he had not established a "clear right to the relief sought," namely, his immediate deportation by the INS. *Id.* (internal quotation marks omitted). Indeed, the court observed that under 8 U.S.C. § 1231(a)(4)(A), " 'the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment' " and, in any event, that § 1231(a)(4)(D) "specifically disallows a private cause of action to compel the Attorney General to deport a convicted alien prior to completion of the sentence." *Duamutef,* 2003 WL 21087984, at *3.

the now-amended INA refers to orders of "removal." *See Calcano–Martinez v. INS,* 533 U.S. 348, 350 & n. 1, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001) (comparing 8 U.S.C. § 1252(a)(1) (1994 ed., Supp. V) with 8 U.S.C. § 1105a (1994 ed.)). These terms are used interchangeably in this opinion.

The District Court's rejection of both claims was buttressed by its conclusion that a CPDO does not constitute a "release" under the INA. *Id.* at *4. This is so, according to the District Court, "[b]ecause the CPDO is contingent on the INS accepting custody and deporting the prisoner." *Id.* Unless and until that happens, "the prisoner is still serving the state sentence." *Id.* Although the District Court acknowledged that "Duamutef's frustration at the glacial pace of the INS attempts to arrange for his travel documents may be understandable,"[5] the court found that the INS had no obligation to effect Duamutef's deportation absent his release from state prison. *Id.* at *5. The court specifically noted that Duamutef's status could not "be characterized as the result of unintended bureaucratic limbo" because "[t]he Parole Board—undoubtably aware that granting Duamutef discretionary release would result in the INS taking custody of Duamutef—has specifically refused to grant Duamutef discretionary release citing his lack of remorse and continued refusal to take responsibility for his crime." *Id.* Judgment was entered on May 21, 2003 and Duamutef filed a timely notice of appeal on June 23, 2003.

## DISCUSSION

On appeal, Duamutef asserts that the INS has violated his due process, equal protection, and Eighth Amendment rights by subjecting him to indefinite incarceration pending deportation. In addition, he argues that the INS, in failing to deport him once he was issued a CPDO, has not

**5.** According to Duamutef, he has spent more time on the INS's CPDO list, awaiting deportation, than any other prisoner in the State of New York.

complied with statutory requirements governing the deportation of aliens. The government argues that the District Court's dismissal of Duamutef's petition should be affirmed. With respect to Duamutef's § 2241 petition, the government asserts that the District Court properly found that it lacked subject matter jurisdiction because Duamutef is not in the physical custody of the INS (the party against whom the writ was sought). According to the government, the District Court properly distinguished our decision in *Simmonds* because Duamutef is not challenging the final order of removal but is seeking to expedite the execution of the order. The government further argues that even if Duamutef is deemed to be in INS custody, the District Court lacked jurisdiction over both his habeas and mandamus claims because 8 U.S.C. § 1252(g) "precludes federal court jurisdiction over any action that implicates the decision of the Attorney General regarding the execution of deportation orders."

■ We review questions of subject matter jurisdiction *de novo*. *See United States v. White*, 237 F.3d 170, 172 (2d Cir.2001).

## I. WE NEED NOT RESOLVE WHETHER DUAMUTEF IS IN INS CUSTODY

Under 28 U.S.C. § 2241(c)(3), a federal court is authorized to grant a habeas petition where a prisoner has established that he is "in custody in violation of the Constitution or laws or treaties of the United States." As we explained in *Simmonds*, this custody requirement is a "jurisdictional prerequisite" for the granting of a § 2241 petition. 326 F.3d at 354.

■ The District Court's dismissal of Duamutef's habeas petition turned principally on the question of whether Duamutef could be viewed as being in the custody of

the INS for habeas purposes given that: (i) a final order of deportation has been issued; (ii) the INS has filed a detainer with state officials; and (iii) the New York State Parole Board has granted Duamutef a CPDO. *Duamutef*, 2003 WL 21087984, at *2–3. As the District Court explained, we recently held that where a petitioner who is currently serving a state sentence seeks to challenge a final order of removal, that order is "sufficient, by itself, to establish the requisite custody" for habeas purposes. *Simmonds*, 326 F.3d at 354. The District Court distinguished *Simmonds* because Duamutef is not challenging the final order of deportation; instead, his grievance is with the Attorney General's delay in executing it. In the District Court's view, *Simmonds*'s "constructive custody is only available insofar that a petitioner is challenging the . . . prospective INS custody." *Duamutef*, 2003 WL 21087984, at *3.

While we agree that *Simmonds* does not, in light of its facts, answer the specific custody question presented in this case, we are reluctant to adopt the District Court's holding that the principles driving the *Simmonds* holding could not be extended to a case like Duamutef's. We need not resolve this complicated question of whether Duamutef is in INS custody because we find that there is a more straightforward jurisdictional basis for affirming the dismissal of Duamutef's claims.

## II. THE DISTRICT COURT LACKED JURISDICTION OVER DUAMUTEF'S CLAIMS

### A. Duamutef Has Not Been "Released" from State Detention

At present, Duamutef remains in state custody, serving time for a second degree murder conviction. Although he completed the minimum term of his 15–years–to–life sentence and is now parole-eligible, the

Parole Board declined to grant Duamutef discretionary release because of the nature of the crime, his continued refusal to accept responsibility for his actions and his lack of remorse.[6] *See supra* at [4–5].

The New York State Parole Board has, however, granted Duamutef a CPDO. As outlined *supra*, under N.Y. Exec. L. § 259–i(2)(d)(i), the Parole Board may grant an inmate a CPDO where it receives assurances from the INS (a) that deportation proceedings will be promptly commenced and (b) that, if the inmate is not deported, he will be returned to the state's custody. New York has not yet released Duamutef into the physical custody of the INS, though, because, according to the government, the latter agency has been unable to obtain necessary travel documents from Jamaica.

■ The law is clear that while Duamutef is still serving his state sentence, the Attorney General is under no obligation to execute a deportation order. Although 8 U.S.C. § 1231(a)(1)(A) provides that "the Attorney General shall remove the alien from the United States within a period of 90 days" from the date that an alien is ordered removed, subsection (a)(1)(B)(iii) clarifies that, for persons such as Duamutef who are otherwise "detained or confined," the "removal period" referenced in (a)(1)(A) does not commence until "the date the alien is *released* from detention or confinement." (emphasis added). Indeed, under § 1231(a)(4)(A), "the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment."

■ Our determination of Duamutef's status—and of the Attorney General's obli-

gations with respect to him—turns, then, on whether the Parole Board's grant of a CPDO to Duamutef can be characterized as a "release" from state custody where, as here, the prisoner has not been delivered to (or retrieved by) the INS. It is clear that granting an inmate standard parole or discretionary release qualifies as a "release" for purposes of § 1231. *See* 8 U.S.C. § 1226(c)(1) (directing the Attorney General to "take into custody" any alien who, by virtue of having committed a particular (specified) crime is inadmissible or deportable "when the alien is released [from imprisonment], without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense"); 8 U.S.C. § 1231(a)(4)(A) (explaining that "[p]arole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal"); *cf. Simmonds*, 326 F.3d at 358 (discussing "the clarity of the law that commands Simmonds' detention and deportation after he is granted parole").

Whether a conditional grant of parole, such as the CPDO granted to Duamutef in this case, is a "release" is a question that we have not yet had occasion to address. The district courts in this circuit that have addressed this question have uniformly rejected the argument that the mere grant of a CPDO constitutes a "release" from state custody. In *Cuomo v. Barr*, 812 F.Supp. 324 (N.D.N.Y.), *appeal dismissed on other grounds*, 7 F.3d 17 (2d Cir.1993), the court explained why a CPDO does not qualify as "parole" as that term is used in the INA:

---

**6.** Duamutef asserts that the INS has, through its imposition of a detainer, "purposely instituted a permanent block to petitioner's discretionary release [by] the Parole Board." There is nothing in the record to support Duamutef's claim that the Parole Board now lacks the authority to grant him a discretionary release.

As can be seen, CPDO is a special variety of parole. While the inmate may be otherwise eligible for parole release inasmuch as he has completed the minimum period of imprisonment, he is not being released pursuant to the statutory provisions applicable thereto, but rather is to be "paroled" only to the custody of the INS. If the INS releases him, . . . then he is not released to ordinary parole supervision under the auspices of the New York State Division of Parole. Rather, he is returned to the Department of Correctional Services . . . facility, where he may be considered for so-called ordinary parole, or held for the full term of his maximum period of court-imposed incarceration.

*Id.* at 328 (citations omitted). In *Cepeda v. INS,* 273 F.Supp.2d 222 (E.D.N.Y.2003), under facts very similar to those presented here, the court held that "because a CPDO does not constitute a release for the purpose of 8 U.S.C. § 1231, no due process rights are implicated by the failure to expeditiously remove an alien who has been issued a final order of deportation during the time that he remains in [state] custody." *Id.* at 224 (citation omitted); *see also Babis v. Breslin,* No. 03–CV–1878, 2004 WL 551204, at *2 (S.D.N.Y. Mar.22, 2004) (explaining that petitioner's "CPDO status is *contingent* on the INS accepting custody and deporting the prisoner. Until such time, he is still lawfully in state custody, serving the state sentence."); *Andriianov v. Meisner,* No. 97–CV–781, 1998 WL 106239, at *1 (N.D.N.Y. Mar.3, 1998) (rejecting plaintiff's argument that INS had obligation to deport him once he was granted CPDO status by the state); *cf. Bispham v. INS,* No. 3:03CV58, 2003 WL 21497198, at *2 (D.Conn. June 27, 2003) (holding that petitioner's "deportation parole" pursuant to Connecticut General Statutes "does not constitute 'release' under § 1231").

We agree with the reasoning of these cases and hold that the mere grant of a CPDO is not a "release" from state custody under the INA. Until Duamutef is released by the state, and the 90–day removal period specified in § 1231(a)(1)(A) is triggered, the pace at which the Attorney General proceeds to take Duamutef into custody and execute the removal order is within his discretion and thus beyond mandamus or habeas review.

### B. Mandamus Jurisdiction

Dismissal of Duamutef's § 1361 petition was required because jurisdiction under the mandamus statute is limited to actions seeking to compel the performance of a *nondiscretionary* duty. *See Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear *nondiscretionary* duty.") (emphasis added); *see also Wilbur v. United States ex rel. Kadrie,* 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930) (Mandamus may not be employed "to direct the exercise of judgment or discretion in a particular way."); *Wan Shih Hsieh v. Kiley,* 569 F.2d 1179, 1182 (2d Cir.) (holding that matters that are entirely within the discretion of the INS are not reviewable under the mandamus statute), *cert. denied,* 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 121 (1978).

The District Court also lacked jurisdiction over Duamutef's mandamus claim under 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under

this chapter."[7] (emphasis added). The Supreme Court has upheld § 1252(g)'s jurisdictional restriction, *see Reno v. American–Arab Anti–Discrimination Committee ("AADC")*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), and although *AADC* expressly requires that we construe § 1252(g) narrowly, *see id.*, we have no difficulty finding that the relief sought by Duamutef comes within the "execut[ion]" prohibition of § 1252(g). Duamutef petitioned the District Court to direct the INS to execute the final order of deportation that has been issued against him. *See* Def.'s App. 8–9 (repeatedly challenging the INS's failure to "effectuate" or "expedite" the petitioner's deportation); Pl.'s Br. ii, 7 (same); *see also Duamutef*, 2003 WL 21087984, at *1 (characterizing Duamutef's petition as "requesting that the INS be ordered to execute the final order of deportation issued against him"); *cf. AADC*, 525 U.S. at 484–85, 119 S.Ct. 936 (clarifying that the Attorney General's discretion with respect to executing removal orders includes "his discretion to abandon the endeavor" whether "for humanitarian reasons or simply for ... convenience"). As a result, we find that jurisdiction over Duamutef's mandamus petition is barred by § 1252(g).

## C. Habeas Jurisdiction

The discretionary nature of the Attorney General's decisions concerning its assumption of custody and removal of Duamutef also bars the District Court's jurisdiction over Duamutef's habeas petition. That is, Duamutef has not satisfied the requirements of § 2241 because he has not alleged any constitutional or statutory right to immediate deportation. Until Duamutef is "released" from the New York state prison, the Attorney General is under no obligation to take him into custody or to execute his deportation order. As we explained in *Sol v. INS*, 274 F.3d 648 (2d Cir.2001), *cert. denied*, 536 U.S. 941, 122 S.Ct. 2624, 153 L.Ed.2d 807 (2002), "federal jurisdiction over § 2241 petitions" is properly limited to "purely legal statutory and constitutional claims" and "does not extend to review of discretionary determinations by the IJ and the BIA." *Id.* at 651 (internal quotation marks omitted); *see also, e.g., Latu v. Ashcroft*, 375 F.3d 1012, 1019 (10th Cir.2004) (holding that petitioner who could not "allege a constitutional or legal right to have removal proceedings against him commenced in a particular place" did not "satisfy the requirement of stating that he is being held in violation of the federal laws or Constitution, and the district court had no jurisdiction to review his claim") (collecting cases) (citation omitted); *cf. INS v. St. Cyr*, 533 U.S. 289, 314 n. 38, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (clarifying that the instant § 2241 petition "raises only a pure question of law as to respondent's statutory eligibility for discretionary relief" and "not ... an objection to the manner in which discretion was exercised"); *Henderson v. INS*, 157 F.3d 106, 120 n. 10 (2d Cir.1998) (noting the distinction between questions of law regarding a petitioner's eligibility for certain forms of discretionary relief (which are reviewable under § 2241) and issues regarding the *exercise* of the Attorney General's discretion), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999). We have no difficulty extending

---

7. As noted *supra*, Duamutef's order of deportation became final on June 16, 1994. Although 8 U.S.C. § 1252(g) was not adopted until 1996 and did not become effective until April 1, 1997, Congress explicitly stated that the provision "appl[ies] without limitation to claims arising from all past, pending and future exclusion, deportation or removal proceedings." IIRIRA § 306(c)(1), 110 Stat. at 3009–612; *see also* note on "Effective Dates, 1996 Acts" following 8 U.S.C. § 1252 (2004).

our holding in *Sol* to discretionary determinations by the Attorney General, such as the one at issue in this case. As a result, until Duamutef is released into INS custody, and the removal period specified in § 1231 is triggered, the pace at which the Attorney General proceeds with Duamutef's deportation is within his discretion and, thus, beyond the District Court's § 2241 purview.[8]

■ Finally, as the District Court observed, Duamutef lacks standing to assert either of these claims under § 1231—which establishes the 90-day removal period—because subsection (a)(4)(D) clearly states that "[n]o cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien." *See de Jesus Calle v. INS*, No. 03 CV 5566, 2004 WL 825598, at *1 (E.D.N.Y. Apr.6, 2004) ("There is no private right to compel deportation prior to the completion of a sentence of incarceration."); *Cepeda*

273 F.Supp.2d at 224 (same); *cf. Thye v. United States*, 109 F.3d 127, 128 (2d Cir. 1997) (per curiam) (holding that, under § 1252(h)(2)(A), the predecessor statute to § 1231(a), "whether or not one is to be deported … prior to completing a prison term is a matter solely within the discretion of the Attorney General" and the INA "does not create a private right of action that would allow a party to compel the Attorney General to act").

## CONCLUSION

For the foregoing reasons, we hold that the CPDO granted to Duamutef does not qualify as a "release" for purposes of the INA and, as such, the decision of whether and when to execute Duamutef's deportation order is entirely within the Attorney General's discretion. Accordingly, we conclude that the District Court lacked subject matter jurisdiction for both Duamutef's § 1361 mandamus claim and for his

---

**8.** In light of our holding, we need not reach the question of whether § 1252(g)'s jurisdictional bar extends to habeas cases. The Supreme Court has not explicitly addressed this issue. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (finding that § 1252(g) did not apply to petitioner's § 2241 challenge to post-removal period custody but seemingly leaving open the question of whether it applied to habeas petitions in other circumstances); *St. Cyr*, 533 U.S. at 311 & n. 34, 312–14 (distinguishing "judicial review" from "habeas review" and holding that § 2241 habeas jurisdiction was not repealed by the 1996 amendments to the INA, but expressly noting that it was not addressing the provisions of § 1252(g)); *AADC*, 525 U.S. at 482–84, 119 S.Ct. 936 (defining the contours of § 1252(g) but not in the habeas context). In *Liu v. INS*, 293 F.3d 36 (2d Cir.2002), we reiterated the *St. Cyr* holding that, as a general matter, "federal courts retain habeas corpus jurisdiction over § 2241 petitions" under the amended INA. *Id.* at 41. We stated clearly, however, that the § 2241 petition at issue in that case—which

challenged the entry of a removal order—"must not be construed to be seeking review of any discretionary decision made by the Attorney General, [because] the INA, as amended [in § 1252(g)], *plainly prohibits such review.*" *Id.* (citations and internal quotation marks omitted) (emphasis added). In a parenthetical, the *Liu* court specifically highlighted § 1252(g)'s reference to the Attorney General's decision to "execute removal orders." *Id.* The *Liu* decision, however, makes no reference to our pre-*St. Cyr* precedents that held that § 1252(g) did not eliminate § 2241 habeas review. *See Jean–Baptiste v. Reno*, 144 F.3d 212, 219 (2d Cir.1998) ("[I]n the absence of language affirmatively and clearly eliminating habeas review, we presume Congress did not aim to bar federal courts' habeas jurisdiction pursuant to § 2241."); *cf. Calcano–Martinez v. INS*, 232 F.3d 328, 339 n. 5 (2d Cir.2000) (noting (and reaffirming) the *Jean–Baptiste* court's holding that "the language of [§ 1252(g)] was insufficient to repeal § 2241"), *aff'd*, 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001).

§ 2241 habeas claim and, therefore, we affirm the judgment of the District Court.