**Rudolph Oneil FORD, Petitioner–Appellant,**

v.

**Alberto GONZALES, Attorney General of the United States, Respondent–Appellee.**

No. 05–5547–ag.

United States Court of Appeals, Second Circuit.

Nov. 8, 2006.

David M. Stern, The Legal Aid Society (Stephen Banks, Adriene L. Holder, Scott A. Rosenberg, Jojo Annobil, Amy V. Messen, Ward J. Oliver, on the brief), New York, NY, for Petitioner.

Shane Cargo, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, Sean H. Lane, Assistant United States Attorney, on the brief), New York, NY, for Respondent.

PRESENT: Hon. B.D. PARKER, Hon. RICHARD C. WESLEY, and Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Petitioner–Appellant Ford argues that the June 24, 2005 decision of the BIA ordering Ford's removal and reversing the February 12, 2004 decision of Immigration Judge ("IJ") Paul A. Defonzo granting Ford relief under former I.N.A. § 212(c), *In re Rudolph Oneil Ford,* No. A41 467 232 (B.I.A. June 24, 2005), *aff'g* No. A41 467 232 (Immig. Ct. N.Y. City Feb. 12, 2004), was erroneous for the following reasons: (1) the BIA's order of removal that accompanied its reversal of the IJ's grant of relief under § 212(c) constituted an order of removal in the first instance that is not within the BIA's authority to issue, and (2) the BIA committed error when it failed to give proper consideration to the

nature of Ford's criminal record and ignored evidence of Ford's rehabilitation because in so doing it ignored or misapplied its own precedent. For the reasons that follow we reject both arguments and hold that we lack jurisdiction to review this petition. We assume the parties' familiarity with the underlying facts and procedural history of the case.

### A. *Whether a valid order of deportation was issued*

Ford argues that the IJ's finding that Ford is deportable does not constitute an order of deportation and, as a result, the BIA's order of removal that accompanied its reversal of the IJ's grant of discretionary relief under § 212(c) is a legal nullity.[1] We disagree. As this Court recently held in *Lazo v. Gonzales,* 462 F.3d 53 (2d Cir.2006) (per curiam), "a finding of removability is an order of removal, so that the [BIA] may reinstate a previous order of removal by overturning an IJ's grant of discretionary relief." *Id.* at 54. As a result, when the BIA reverses an IJ's grant of discretionary relief to a petitioner that accompanied the IJ's finding of deportability, the BIA's decision is not an order of deportation in the first instance, rather it merely "remove[s] an impediment to the [deportation] that was ordered by the IJ." *Id.*[2] Here, the IJ found that Ford was deportable. We hold, therefore, the IJ's finding that Ford was deportable constituted an order of deportation. Con-

---

1. The IJ's decision refers to "deportation" and "deportability." The BIA's decision orders Ford "removed from the United States." Our recent decision, *Lazo v. Gonzales,* 462 F.3d 53 (2d Cir.2006) (per curiam), referred to "removal" rather than "deportation" orders. The statute at issue in *Lazo,* as here, however, deals with "orders of deportation" and our conclusion in *Lazo* is based in part on the proposition that "removal" and "deportation" are terms that may be used interchangeably. *Lazo,* 462 F.3d at 54 (citing *Evangelista*

*v. Ashcroft,* 359 F.3d 145, 147 n. 1 (2d Cir. 2004); *Duamutef v. INS,* 386 F.3d 172, 176 n. 4 (2d Cir.2004)).

2. As in *Lazo,* because the IJ's finding of deportability constitutes an order of deportation, we need not and do not reach the issue of whether the BIA has the power to issue deportation orders in the first instance. *See Lazo,* 462 F.3d at 55 n. 1.

trary to Petitioner's argument, the BIA was fully within its authority to reinstate that order by reversing the IJ's grant of discretionary relief. *Id.*

### B. *Whether we have jurisdiction to review the decision of the BIA denying Ford relief under former § 212(c)*

■ Having determined that the BIA had the authority to enter the order it did, we turn to whether this Court has jurisdiction to review the BIA's decision. Under 8 U.S.C. § 1252(a)(2)(B), a discretionary decision of the BIA (as the delegate of the Attorney General) is generally unreviewable on appeal:

> Notwithstanding any other provision of law ... no court shall have jurisdiction to review ... (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security....

8 U.S.C. § 1252(a)(2)(B). The grant or denial of § 212(c) relief is a discretionary decision. I.N.A. § 212(c) (8 U.S.C. § 1182(c) (1994) (repealed 1996)) (specifically providing that the granting of relief is within "the discretion of the attorney general"); *see also In re Marin,* 16 I. & N. Dec. 581, 583, 1978 WL 36472 (BIA 1978) ("[T]he Attorney General or his delegate is required to determine as a matter of discretion whether an applicant warrants [§ 212(c)] relief...."). 8 U.S.C. § 1252(a)(2)(D) restores appellate jurisdiction in limited circumstances. That section provides that no provision of the INA "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review...." 8

U.S.C. § 1252(a)(2)(D). Our jurisdiction to review the BIA's decision to deny Ford § 212(c) relief depends, therefore, on whether Ford's challenges to the BIA's decision can be characterized as raising either constitutional claims or questions of law. We hold they cannot. We, therefore, lack jurisdiction to review the BIA's decision.

■ As we recently explained, "absent a specific issue of statutory construction, the term 'questions of law' in 8 U.S.C. § 1252(a)(2)(D) does not provide our Court with jurisdiction to review a petitioner's challenge to a decision firmly committed by statute to the discretion of the Attorney General." *Bugayong v. I.N.S.,* 442 F.3d 67, 72 (2d Cir.2006). As for whether a petitioner raises a "constitutional claim," we have explained that:

> [T]he mere assertion that an IJ has "abused his discretion" by "incorrectly weigh[ing] the evidence, fail[ing] to explicitly consider certain evidence, [or] simply reach[ing] the wrong outcome" does not itself establish a colorable "constitutional claim" within the meaning of 8 U.S.C. § 1252(a)(2)(D), even if a petitioner "dress[es] up" his claim in the language of due process.

*Id.* (quoting *Saloum v. U.S. Citizenship & Immigration Services,* 437 F.3d 238, 244 (2d Cir.2006)). Here, Ford argues that the BIA ignored or misapplied its own precedent when it failed to give proper consideration to the nature of Ford's criminal record and ignored evidence of Ford's rehabilitation. Because those claims amount to nothing more than a challenge to the weight accorded them in the BIA's analysis,[3] we lack jurisdiction to review the BIA's denial of § 212(c) relief.

Because the BIA acted within its authority when issuing the discretionary decision

---

**3.** Contrary to Ford's arguments on appeal, in considering his second degree manslaughter

conviction the BIA stated that it adopted the IJ's findings of fact and considered not only

929

that is the subject of this petition, this Court is without jurisdiction to review it, and the petition is, therefore, **DISMISSED.**

Upon consideration of Ford's motion filed October 27, 2006 for a stay of expiration of his voluntary departure period, that motion is hereby **GRANTED,** and Ford's voluntary departure period is stayed for a period of ten days from the filing of this order.

the conviction but the circumstances of the offense as well. In so doing, the BIA followed its own precedent. *See In re Roberts,* 20 I. & N. Dec. 294, 301, 1991 WL 353515 (BIA 1991) (allowing consideration of circumstances surrounding a crime, but prohibiting going "behind a record of conviction to reassess an alien's ultimate guilt or innocence").

Also, although the BIA regarded Ford's additional criminal conduct during the pendency of his deportation proceeding to be "a significant adverse factor," it specifically adopted the IJ's findings of fact and considered "the record as a whole, weighing the positive equities against the negative factors."